**STEVENSON et al. v. SHERMAN et al.**

No. 14218.

Court of Civil Appeals of Texas. Dallas.

May 12, 1950.

Rehearing Denied June 16, 1950.

Chrestman, Brundidge, Fountain, Elliott & Bateman, Dallas, for appellants.

Robert W. Finklea, Will Wilson, Jr., District Attorney, and Philip Silverberg, all of Dallas, for appellees.

YOUNG, Justice.

This suit was filed January 29, 1949 by appellee Sherman, a candidate for office of Dallas County Commissioner No. 1, 1948 Democratic Primaries, on behalf of himself and all other candidates similarly situated, against appellants Stevenson and Wynes, Chairman and Secretary-Treasurer, respectively, of the Dallas County Democratic Executive Committee; alleging that the candidates had paid to defendants sums of money (more than $40,000) in proportionate assessments for defraying expenses of holding such primaries, as provided by Art. 3108, Vernon's Ann.Civ.Sts.; that defendants had made no accounting of said funds but were illegally expending same, praying for injunction against further disbursements, for an accounting and return to all candidates of any surplus money remaining after deduction of lawful expenses of aforesaid primary elections.

Defendants (appellants here) answered by general denial and bill of interpleader, naming plaintiff and 13 others as representatives of the whole class of such candidates, also bringing in the County of Dallas; alleging that after cost of said primaries had been estimated, the various candidates had paid in the total sum of $43,824. Expenditures from such fund were then listed of $39,789.50, leaving a balance of $4,034.50 which they tendered into court for apportionment among those entitled thereto, subject to a claim of Dallas County for rental of voting machines.

The case went to trial on amended pleadings of all parties, plaintiff and cross-defendants detailing items aggregating $6,310.49 spent by Stevenson and Wynes allegedly in excess of amounts authorized by law, and praying for accounting and judgment in such amount against said defendants jointly and severally; and, in further defense to the claims of Sherman and associates, defendants interposed an agreement appearing in the body of application signed by all candidates for office, whereby 25% of each fee or payment was to be retained by the Dallas County Democratic Executive Committee for services rendered and costs incident to said primaries and not subject to refund; appellees by trial amendment attacking the proviso just mentioned as illegal and unauthorized under Arts. 3108 and 3022a of the Statutes. Upon hearing, judgment was rendered as of October 20, 1949 in favor of all 1948 candidates at the Dallas County Democratic Primaries and against appellants in amount of $3,139.36 with interest and costs, from which this appeal has been duly prosecuted.

Issues raised and decided are sufficiently reflected in various findings and conclusions of the trial court made a part of

above judgment, as consolidated in appellants' brief, viz: (1) That the County of Dallas should recover the sum of $1,820.75; (2) that certain expenditures by the defendants (appellants) out of funds contributed by the 1948 candidates, which were listed in the total sum of $5,076.48, were unlawfully expended by said defendants; (3) that defendants were trustees of all sums paid in by said candidates in the sum of $43,824.00, less any amounts lawfully or legitimately expended by them for defraying costs and expenses of said 1948 Primaries, for the benefit of all candidates who contributed and to whom should have been refunded any excess of funds contributed by them after such legitimate costs and expenses had been paid; (4) that prior to payment of any assessments by the candidates, there was on hand in possession of said defendants the sum of $1,937.12 which should be deducted from the aforesaid sum found by the court to have been illegally and unlawfully expended by them; (5) that defendants have tendered into court $4,034.50, the amount of cash remaining on hand out of funds paid in by candidates in the 1948 Democratic Primaries; (6) that the 1948 Democratic Primary candidates should have refunded to them the balance remaining on hand in the registry of the court after paying the County of Dallas' claim of $1,820.75 and $400 attorney's fees, and that such candidates should have refunded to them the amount of this judgment, if and when paid, in proportion to the amounts originally contributed; (7) that "an instrument which candidates in the 1948 Democratic Primaries were required to sign, agreeing to contribute up to 25% of the assessments to the Democratic Executive Committee of Dallas County, was illegal, void, and against public policy; that the signatures of candidates to such agreements contravened the laws of the State of Texas governing Democratic Primary assessments"; (8) that attorney for defendants was entitled to a reasonable attorney's fee of $400 for tendering into court the sum of $4,034.50. (No complaint is made by anyone of above award to Dallas County of $1,820.75 nor of attorney fees.)

In the court's judgment the following disbursements made by appellants "out of funds contributed by candidates in the 1948 Democratic Primaries" were found to have been unlawfully expended: "Stenographic hire prior to the first Democratic Primary of 1948 $214.20; State Association of Democratic County Chairmen $50.00; Furniture and fixtures purchased $350; Expenses of Stenographic reporting for all conventions and committee meetings $427.50; All expenses incident to the May, 1948 Precinct and County Democratic Conventions $510.45; Eleven (11) payments of $150.00 each to Arthur Stevenson $1,650.00; All payments to J. A. Wynes $1,650.00; Travel and incidental expense allowance * * * to Arthur Stevenson $75.00; Bond premium for J. A. Wynes * * * $25.00; Premium for insurance on furniture * * * $10.50; Long distance call by Arthur Stevenson to Austin, Texas * * $1.38; Office sign on door * * * to T. P. Murphy $5.50; Ventilator repairs * * $31.50; Cleaning Hall of Records * * * $5.00; Payment for map (precincts) * * $25.00; Newspaper subscription * * * $2.00; Service charge on air conditioner * * * $5.00; Cleaning service (office) * * * $5.00; Stenographic services in October 1948 * * * $33.00. Total $5,076.48." The net judgment of $3,139.36 was determined by subtracting from above total of $5,076.48 the sum of $1,937.12, a carry-over of bank balance from previous years.

Appellants assert court errors (1) "in refusing to give effect to, and holding illegal, void and against public policy, the agreement signed by each of the candidates that an amount not in excess of 25% of his assessment be retained by the Democratic Central Committee for the payment of certain expenses of the committee not specifically authorized by statute"; (2) " * * in rendering judgment against appellants, for sums paid out as expenses of the Dallas County Democratic Executive Committee, in the face of the express agreement of those in whose favor the judgment was rendered that such expenses be paid out of the funds contributed by them and waiving

any right to the refund thereof"; (3) in the holding that sums of money were unlawfully expended by appellants beginning with item one of "stenographic hire prior to the first Democratic Primary of 1948 ($214.20)" through to the last of "stenographic services in October, 1948 * * * (Mildred Welch) $33.00," and in rendering judgment against them for an amount including such items. (With reference to the charge "Arthur Stevenson $1,650," appellants merely complain of the finding that same was paid out of 1948 funds. No point is made of this, however, in view of the fact that appellants were given credit in judgment for the sum of $1,937.12 on hand prior to the payment of any assessments by the 1948 candidates.)

All assessments from candidates referred to herein were banked in name of Dallas County Democratic Executive Committee and subject to check of Stevenson, Chairman, and Wynes, Secretary-Treasurer.

Article 3108, V.A.C.S., provides: "At the meeting of the county executive committee provided in Article 3117, the county committee shall also carefully estimate the cost of printing the official ballots, renting polling places where same may be found necessary, providing and distributing all necessary poll books, blank stationery and voting booths required, compensation of election officers and clerks and messengers, to report the result in each precinct to the county chairman, as provided for herein, and all other necessary expenses of holding such primaries in such counties and shall apportion such cost among the various candidates for nomination for county and precinct offices only as herein defined, and offices to be filled by the voters of such county or precinct only (candidates for State offices excepted), in such manner as in their judgment is just and equitable, giving due consideration to the importance and emoluments of each such office for which a nomination is to be made and shall, by resolution, direct the chairman to * * mail to each person whose name has been requested to be placed on the official ballot a statement of the amount of such expenses so apportioned to him, with the request that he pay the same to the county chairman on or before the Saturday before the fourth Monday in June thereafter." This statute has reference to the July (general) and August (run-off) Democratic Primaries, Art. 3102, and the expense necessarily incident thereto. Monies collected under authority of Art. 3108 constitute trust funds, Kauffman v. Parker, Tex.Civ.App., 99 S.W.2d 1074, Small v. Parker, Tex.Civ. App., 119 S.W.2d 609, to be disbursed only as provided therein; the law being accorded a strict construction. "The authority to require payment of a certain portion of the costs of a primary, conferred on an executive committee, is one which should be strictly scrutinized and never be extended by implication." Holzschuher v. Wurzbach, Tex.Civ.App., 286 S.W. 289, 290. See, also, Lane v. Sanders, Tex.Civ.App., 95 S.W.2d 1327.

In Small's appeal, supra, payment of a salary to the county chairman was expressly banned; all Articles under Title 50, Chapter 13, Nominations, appearing to place the office on a footing similar to that of precinct chairman or committeeman and assuming a voluntary contribution of services. In fact, no provision for remuneration to a county chairman is found in the entire Title' except under Art. 3022a where, for work in tabulating returns, etc., he is to "receive the same compensation per hour as allowed precinct judges of election." Here it is proper to observe that aforesaid election laws imply to the county executive committee a continuity of organization, Arts. 3102, 3118, 3134, and with political functions having no relationship to the midsummer primaries; it having long been a committee custom, however, to pay the expense incident to such other activities from any balance of funds on hand together with that collected from the assessment of candidates in primary years. In 1948, party officials were generally familiar with the effect of above Kauffman and Small decisions and in consequence, by Executive Committee action, the following proviso was made a part of the statutory application of candidates for place on the Democratic ballot: "It is further agreed that out of the payment as required by law to have my name placed on the Offi-

cial Primary ballot for this primary that an amount not in excess of twenty-five per cent of said fee is to be retained by the Democratic Committee of Dallas County for the payment of the Secretary and Assistant Secretary of this Committee for services rendered and for the payment of telephone, telegrams, stationery, multigraphing, printing, stenographic hire and such other expenses incidental to the work of the Central Committee and its officers during the primary or primaries and the interim thereto, every two years. Said percentage so retained shall not be subject to refund to any candidate exercising the primary privileges, and I hereby waive all my rights, title and interest in and to said percentage retained." The application in question signed by each candidate was addressed to appellant Stevenson.

■ Article 3113, V.A.C.S., setting forth requirements of the mentioned application or "written request" reads in part: "Any person desiring his name to appear on the official ballot for the general primary, as a candidate for the nomination for any office to be filled by the qualified voters of a county or a portion thereof, or for county chairman, shall file with the county chairman of the county of his residence, not later than Saturday before the third Monday in June preceding such primary, a written request for his name to be printed on such official ballot as a candidate for the nomination or position named therein, giving his occupation and post-office address, * * *"; and perforce of Art. 3108 each applicant or candidate was required to post with the county chairman by the fourth Monday in June his apportioned part of the *necessary expense of holding such primaries*. In view of above statutory restriction, it is quite apparent that the County Executive Committee is without authority to lay any additional assessment against candidates, and the quoted proviso is to that extent a nudum pactum and void. The statute, having given definite bounds to expenses generally chargeable against candidates for nominations, its provisions "cannot be amended or overturned by any inherent powers sup-

posed to be lodged in political committees." Holzschuher v. Wurzbach, supra.

■ But appellants argue that the County Executive Committee, a voluntary association of citizens banded together for the maintenance of Democratic principles, can, through its chairman, lawfully contract with those who seek office under Party auspices, "that such candidates will pay their pro rata part of the general expenses of the committee, over and above those specifically mentioned in the statute, since the statute does not prohibit such an agreement." True, it is, that candidates are not prohibited from contributing to general expenses over and above aforesaid statutory assessment, provided the arrangement remains on a purely optional basis, having no connection with and entirely aside from his written application of candidacy. It is quite another thing, however, to impose such additional requirement upon an applicant as a condition for place on the official ballot. The result is an exaction, not a contract freely and voluntarily entered into; and inimical to both statute and public policy. Said the Court in Small v. Parker, supra: "Furthermore, if the county chairman and committee is (are) vested with authority to make assessments beyond that which is reasonable and necessary for the defraying of the expenses of the primary, then if they could pay the county chairman an annual salary they could just as well pay the various members of the committee a salary and this would make it prohibitive on the candidates to announce for office and have their names placed on the ticket, thus destroying the very purpose for which the county chairman and the committee exists." [119 S.W.2d 611.]

■ Further, appellee Sherman testified that Secretary Wynes refused to accept his application unless it contained the assignment of 25% of funds to the committee, stating that he had to sign it to get on the ticket; the instrument being signed unwillingly, as "I wanted to get on the ticket and there was too short a time to try to fight the thing out." This would

constitute legal duress as an act on part of appellant officials "which the party threatening has no legal right to do, made in such manner as to cause the party threatened against his will to do some act which he is not legally bound to do, and against which he has no present means of protection." Dale v. Simon, Tex.Com.App., 267 S.W. 467, Syl. 1; Ward v. Scarborough, Tex.Com.App., 236 S.W. 434.

We turn to an examination of the items (already enumerated) aggregating $5,076.84 allegedly disbursed by appellants from 1948 candidate funds which the trial court has found to have been unlawfully expended; that is, expenditures not reasonable and necessarily incident to the summer primaries of that year and therefore unauthorized under Art. 3108. The items derive from testimony which we regard as undisputed; hence whether or not they constitute a necessary expense will be without reference to the trial court's conclusions, since the presumption in favor of a finding of fact on disputed testimony does not attach to a conclusion drawn from undisputed evidence. Funk v. Walker, Tex.Civ.App., 241 S.W. 720; Gulf, C. & S. F. Ry. Co. v. Gaddis, Tex.Com.App., 208 S.W. 895. Here it should be stated, in line with a previous observation, that the law, Chapter 13, Nominations, Title 50, makes no provision for expenses of any executive committee as a "going concern" or while in discharge of duties required by statute but not directly connected with the general primary elections; a defrayal thereof through voluntary contributions of those particularly interested in such other activities being the only alternative. For example, election of the May delegates, Art. 3167, V.A.C.S., National Convention, is under supervision of the county committee, the expense of precinct and county conventions, under the testimony, being customarily defrayed from the committee exchequer. This expenditure, upon challenge, must be held as having no connection with the July primaries and hence an unauthorized charge against the July candidates. Moreover, if the cost of Presidential primaries cannot be made a statutory charge against all citizens of a coun-

ty (in which respect the Presidential Primary Act of 1913 was declared unconstitutional, Waples v. Marrast, 108 Tex. 5, 184 S.W. 180, L.R.A.1917A, 253, then for better reason it ought not to be imposed arbitrarily upon a particular class. Obviously, therefore, all committee disbursements relative to the May 1948 Convention (Presidential) in amount of $510.45 were unauthorized, together with $61.50, the stenographic cost of reporting that convention. With further reference to the item of $427.50 (court reporter, stenographic) disapproved by the trial court, we hold that such expense is appropriate only to meetings of the executive committee that are required by law and to the county conventions following each primary (general and run-off). These meetings are, so far as the county committee is concerned, the second Monday in June, Art. 3134, third Monday, Art. 3117, and those following each primary in canvassing and declaring the results of election, Arts. 3124, 3125; and would limit the authorized charge for stenographic reporting to $239.50 (Committee meetings of June 21, July 26 and 31, and September 10th).

Among other major items is the payment to Chairman Stevenson of $1650 in $150 installments, paid during 1948 for services rendered in the 1947 redistricting of county precincts, first check dated April 9, prior to which time several candidates had paid in their tentative assessments. Such was obviously an unauthorized expenditure; Small v. Parker, supra; but not so, we think, with respect to amounts drawn by Mr. Wynes, Secretary, for services to extent of $1,500. His employment on March 1st by the finance committee, approved by the entire body, was to cover the general and run-off primaries. The amount was no more than usually paid for such administrative service which, from the testimony, directly concerned these elections; and, being performed to the best of his ability, became a proper charge against all candidates. However, the further sum of $150 drawn by Wynes in October, along with payment to Miss Welch of $33 for stenographic services was an improper charge. They

were costs incurred by the Committee in selecting a Legislative nominee, November elections, and, in all fairness, should have been assessed against the numerous applicants for that post.

■ We may take note of further items disallowed, and properly so: $207.90, office help, Miss Ruggles April 1 to May 15; $75, contribution to State Association of Democratic County Chairmen; $350, furniture and fixtures purchased ($10.50 insurance premium in connection), a capital investment, and in no event to be borne solely by the '48 candidates. Other smaller items may well be classified as necessary expenses without detail or discussion. Summing up, we find the sum of $3,149.85 as the aggregate of items improperly expended; and, with credit of $1,937.12 on hand, there remains $1,212.73 for which appellants should be held accountable.

■ The fact that all expenditures on part of appellants were made in good faith and (aside from salary to Stevenson) were in accord with usage and custom of prior years, is not to be doubted. Nevertheless a trust fund was here involved; appellants being chargeable in law with knowledge that the statutory wording "necessary expenses of holding such primaries" had been given a strict construction and that usage and custom exist only when in harmony with public policy and statute; 42 Tex.Jur., p. 837; Alliance Ins. Co. v. Continental Gin Co., Tex.Com.App., 285 S.W. 257; McDaniel v. State, Tex.Civ. App., 9 S.W.2d 478. It is argued that the challenged disbursements were all within a budget approved by the Executive Committee, but Committee discretion and authority are limited to outlays within purview of Art. 3108; Small v. Parker, supra. The rule stated in Crosthwait v. State, 135 Tex. 119, 138 S.W.2d 1060, 1061, is equally applicable here, that when in exercise of a statutory function (assessment of candidates), both the Executive Committee and County Chairman must look to the law under which they exist and their duties are defined, to ascertain the extent of their powers and line of duties, and they are not "permitted to transcend the former, nor to vary the prescribed mode of performance of the latter."

The judgment in question is reduced to the sum of $1,212.73 and to that extent is in all respects affirmed.

## On Rehearing

■ Above opinion is corrected to read that the item of $75, disallowed, was reimbursement to appellant Stevenson for expense of trips to Austin and Hillsboro in connection with a State Democratic Party barbecue at Fort Worth. Also, we overlooked the item of $50, donation to State Association of Democratic Chairmen, an improper expense, which would increase the unauthorized expenditures to that extent, or a total judgment herein rendered of $1,262.73.

■ Appellees complain of our allowance of $1,500 to J. A. Wynes. The record discloses that this amount was not paid to him as Secretary-Treasurer merely; but as an employee of the Executive Committee, devoting full time to matters directly incident to the July and August primaries. That the particular services were necessary in connection with aforesaid primaries is indicated by voluminous testimony. Salary attached to the office of County Chairman is quite another matter, the statute implying on part of this official, as we have heretofore pointed out, a voluntary contribution of services.

■ Motions of the parties for rehearing are severally overruled with liability and consequent judgment against appellants, now fixed as in the sum of $1,262.73. The judgment here rendered, having been reduced by approximately 60%, that proportion of the costs of appeal will be taxed against appellees, and the remaining 40% thereof against appellants.