**FIRST STATE BANK, MORTON,
Texas, Appellant,**

v.

**O. D. CHESSHIR et ux., Appellees.**

**No. 9267.**

Court of Civil Appeals of Texas,
Amarillo.

Feb. 25, 1981.

Rehearing Denied March 25, 1981.

James K. Walker, Morton, for appellant.

George E. Gilkerson and David A. Hess, Lubbock, for appellees.

REYNOLDS, Chief Justice.

The multi-cause of action underlying this appeal was brought by O. D. Chesshir and

his wife, Donletti Chesshir, to recover damages from First State Bank, Morton, Texas, for the bank's disposition of their deposited funds contrary to the tenor of the bank's time certificate of deposit issued to them. Judgment in favor of the Chesshirs and against the bank was rendered on a jury's verdict convicting the bank of an act declared unlawful by the Deceptive Trade Practices-Consumer Protection Act (DTPA).[1] The question critical to the bank's appeal is: were the Chesshirs "consumers," who are granted a right of action by the DTPA, in the certificate of deposit transaction? Concluding that the Chesshirs were not consumers in the transaction, we reverse and render.

The bank issued to the Chesshirs its Time Certificate of Deposit No. A 1938, dated 1 April 1975, which recited, in part, that "O. D. or Donilita (sic) Chesshir HAS DEPOSITED IN THIS BANK" $10,163.80 "Payable 4–1–1979, with interest at 7¼ percent per annum upon surrender of this certificate." Previous thereto on 12 December 1974, O. D. Chesshir had executed an assignment of savings account, identified by the entry of "C.D. # A–1938," as security for "$10,000.00." By the assignment, the Chesshirs understood they were guaranteeing $4,000 of $40,000 the bank would, and later did, loan their son, Donald Rhea Chesshir, pursuant to a Small Business Administration guaranty.

Thereafter on 29 June 1976, the bank notified O. D. Chesshir that "your Certificate of Deposit No. A–1938 has been cashed in and applied to the [delinquent] loan of Donald Rhea as per the assignment and instructions from the Small Business Administration." The bank returned to the Chesshirs $163.80, the excess of the amount which the bank maintained was assigned. This litigation ensued.

At the time the Chesshirs' alleged DTPA cause of action arose,[2] the DTPA granted, as it presently grants, a right of action to "a consumer," as defined, who has been adversely affected by an act or practice declared unlawful by its provisions. Section 17.50. Thus, to prevail on the jury's verdict, the Chesshirs were required to be consumers in the certificate of deposit transaction. By the DTPA's section 17.-45(4) definition at the time,

"Consumer" means an individual who seeks or acquires by purchase or lease, any goods or services.

The Chesshirs contend they were consumers on the theory that their purchasing of the certificate of deposit was a purchase of services from the bank.[3] We do not perceive the theory to be viable under the present state of the law.

By the recorded transaction, the Chesshirs deposited a present sum of money in exchange for the bank's certification of the payment of that sum, with interest, four years later. Simplistically, the Chesshirs sought only money to be paid in the future as evidenced by the time certificate of deposit.

In *Riverside Nat. Bank v. Lewis*, 603 S.W.2d 169 (Tex.1980), the Supreme Court held, albeit by a sharply divided court, that money is not "goods" as defined by the DTPA, and the attempt to acquire money is not an attempt to acquire services as defined by the DTPA. *Id.* at 174–75. This court is bound by the pronouncements of the Supreme Court on the law. *Woodard v. Texas Dept. of Human Resources*, 573 S.W.2d 596, 598 (Tex.Civ.App.—Amarillo 1978, writ ref'd n. r. e.). Accordingly, the Chesshirs did not seek or acquire either goods or services as defined by the DTPA in the certificate of deposit transaction and,

1. The Deceptive Trade Practices-Consumer Protection Act is a part of the Texas Business and Commerce Code (Vernon Supp.1980), section 17.41 *et seq.* All references to sections are to the sections of the DTPA.

2. Controlling are the DTPA statutory provisions which were in effect at the time the cause

of action arose. 1979 Tex.Gen.Laws, ch. 603, § 9, at 1332; *Riverside Nat. Bank v. Lewis*, 603 S.W.2d 169, 172 (Tex.1980).

3. The Chesshirs do not contend that they sought or acquired, or that the bank provided, any other service in the transaction.

thereby, were not consumers who could bring an action under section 17.50 of the DTPA.

We, therefore, sustain the bank's points of error three thru six which are complaints that the Chesshirs were not consumers in the transaction. We have carefully considered the bank's remaining points of error [4] by the applicable rules of review and the controlling law and, in the interest of brevity, it suffices to state that reversible error is not demonstrated under any of the points. Points one, two, seven and eight are overruled.

The judgment of the trial court is reversed, and judgment is here rendered that O. D. Chesshir and his wife, Donletti Chesshir, take nothing by virtue of their DTPA action against First State Bank, Morton, Texas. Tex.R.Civ.P. 434.

---

4. Points one and two are complaints of no evidence to support the submission of five special issues; point seven is a complaint that the Chesshirs' actual damages are not subject to be trebled; and point eight is a complaint that the court erred in not disregarding the jury's answer to one, and its failure to answer another, of the bank's defensive issues.