**FIRST STATE BANK, MORTON, Texas, Appellant,**

v.

**O. D. CHESSHIR, et ux., Appellees.**

**No. 9267.**

Court of Appeals of Texas, Amarillo.

March 31, 1982.

Rehearing Denied May 28, 1982.

James K. Walker, Morton, for appellant.

George E. Gilkerson, David A. Hess, Lubbock, for appellees.

Before REYNOLDS, C.J., and DODSON and COUNTISS, JJ.

REYNOLDS, Chief Justice.

In the litigation on a certificate of deposit transaction, O. D. Chesshir and his wife, Donletti Chesshir, recovered a monetary judgment against the First State Bank, Morton, Texas, upon a jury verdict convicting the bank of an act declared unlawful by the Deceptive Trade Practices-Consumer Protection Act (DTPA). Tex.Bus. & Comm. Code Ann. § 17.41 et seq. (Vernon Supp. 1982). Holding that the Chesshirs were not "consumers" who could bring an action on the transaction under the DTPA, we reversed the trial court's judgment and rendered judgment that the Chesshirs take nothing by their DTPA action. First State Bank, Morton v. Chesshir, 613 S.W.2d 61, 62–63 (Tex.Civ.App.—Amarillo 1981, writ granted).

Following our judgment, the Chesshirs moved for a rehearing, contending for the first time that they were entitled to a modification and rendition of judgment, or alternatively a remand for a new trial, on the causes of action for fraud and wrongful conversion alleged in their trial pleadings. As we then viewed the appellate record, the cause was tried as a DTPA action and, thereby, the parties were restricted to that theory on appeal. Davis v. Campbell, 572 S.W.2d 660, 662 (Tex.1978). We, therefore, overruled the motion for rehearing without writing further.

The Supreme Court, holding that our failure to consider the Chesshirs' arguments on conversion is in conflict with the rule of McKelvy v. Barber, 381 S.W.2d 59 (Tex. 1964), reversed our judgment and remanded the cause for our consideration of the conversion cause of action. Chesshir v. First State Bank of Morton, Tex., 620 S.W.2d 101 (Tex.1981). We now, on the rationale expressed below, reform and affirm the trial court's judgment.

The trial court's judgment contains a finding from the verdict of the jury and the law applicable thereto that the Chesshirs' actual damages were "Ten Thousand And No/100 Dollars ($10,000.00), together with interest thereon at the legal rate of seven and one-quarter (7¼%) percent per annum from April 1, 1976, until date of entry of judgment [27 May 1980], for a total of Thirteen Thousand Twenty and 84/100 Dollars ($13,020.84)." After further finding from the verdict that the actual damages should be trebled, the court decreed that the Chesshirs recover from the bank $39,062.52, plus interest thereon at the legal rate of nine (9%) percent per annum from 27 May 1980 until paid, together with attorney's fees stipulated in the judgment and costs.

In our original opinion, we described the background of the litigation leading to the judgment in these words:

The bank issued to the Chesshirs its Time Certificate of Deposit No. A 1938, dated 1 April 1975, which recited, in part, that "O. D. or Donilita (sic) Chesshir HAS DEPOSITED IN THIS BANK" $10,163.80 "Payable 4–1–79, with interest at 7¼ percent per annum upon surrender of this certificate." Previous thereto on 12 December 1974, O. D. Chesshir had executed an assignment of savings account, identified by the entry of "C.D. # A–1938, as security for "$10,000.00." By the assignment, the Chesshirs understood they were guaranteeing $4,000 of $40,000 the bank would, and later did, loan their son, Donald Rhea Chesshir, pursuant to a Small Business Administration guaranty.

Thereafter on 29 June 1976, the bank notified O. D. Chesshir that "your Certificate of Deposit No. A–1938 has been cashed in and applied to the [delinquent] loan of Donald Rhea as per the assignment and instructions from the Small Business Administration." The bank returned to the Chesshirs $163.80, the excess of the amount which the bank maintained was assigned. This litigation ensued.

613 S.W.2d at 62.

In their live trial pleadings, the Chesshirs also included allegations that on or about 20 January 1976, the bank wrongfully converted their certificate of deposit to the bank's use and benefit, and that, because the bank refused to return the certificate or pay its fair market value after demand, they were

entitled to its fair market value of $10,-163.80, plus interest at the rate of seven and one-fourth percent per annum since the date of conversion. The bank lodged a special exception to the allegations "for the reason that conversion is not a proper cause of action in this case," but the record does not show that the exception ever was presented to or acted upon by the court.

■ To recover under their pleadings of conversion, the Chesshirs were required to establish (1) that property owned by them (2) was converted by the bank, and (3) the value of the property. *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 445 (Tex.1971). A conversion occurs in law by one's unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another to the exclusion of or inconsistent with the owner's rights. It is unnecessary to a conversion that there be a manual taking of the property. *Id.* at 447.

■ The first factual element of the pleaded conversion, the Chesshirs' ownership of the certificate of deposit, was conclusively established by the undisputed evidence. Consequently, that element should not have been, and properly was not, submitted to the jury. *Wright v. Vernon Compress Company*, 156 Tex. 474, 296 S.W.2d 517, 523 (1957).

■ The second element, a conversion, was not conclusively established by the evidence. Without question, the bank assumed and exercised dominion and control over the certificate to the exclusion of the Chesshirs' rights expressed in its provisions; however, the question whether the bank's action was authorized or was wrongful remained a disputed fact under the evidence. To show that its action was authorized, the bank adduced evidence that Mr. Chesshir assigned the certificate as security for repayment, and to be applied upon nonpayment, of the bank's loan made to the Chesshirs' son. To show that the bank's action was wrongful, the Chesshirs presented evidence that the certificate was assigned only to guarantee Mr. Chesshir's $4,000 note giv-

en to, and later nullified by, the bank as security for the son's note. Hence, the question of the bank's authorized or wrongful action was for submission to, and resolution by, the jury. *Id.*

The Chesshirs originally asserted in their motion for rehearing that conversion was submitted to the jury in special issue no. 1(a), and later asserted in the Supreme Court that conversion was submitted in special issues nos. 1(a) and 3(a). The issues and the jury's answers thereto read:

1.

(a) Find from a preponderance of the evidence whether or not, at the time of O. D. Chesshir's execution of the assignment of certificate of deposit in question, that it was the agreement of both O. D. Chesshir and the Bank that the certificate was to be used as collateral security for the SBA-guaranteed loan of the Bank to Donald Rhea Chesshir?

If you find from a preponderance of the evidence that such was the agreement of the parties named, answer, "It was their agreement;" if you find from a preponderance of the evidence that such was not the agreement of the parties named, answer, "It was not their agreement," and if you fail to find either such answer from a preponderance of the evidence, you will answer, "Not proved."

ANSWER:___"It was not their agreement"___

\* \* \* \* \* \*

3.

(a) Do you find from a preponderance of the evidence that the Bank, in the transaction in question, agreed with or represented to O. D. Chesshir that the certificate of deposit in question would be applied only as security for his guaranty note in the amount of $4,000.00, then transferred the certificate of deposit to the SBA as part of the security for the entire Donald Rhea Chesshir loan?

Answer "yes" or "no."

ANSWER:___Yes___

■ In the trial court, the bank made no objection to special issue no. 1(a). The bank

unsuccessfully objected to the submission of issue no. 3 and its sub-parts, premising its objections on the relation of the issues to questions of violations of the DTPA. The bank also objected without success to issue no. 3(a) for the reason there was no evidence or, alternatively, insufficient evidence to support its submission. No objection was directed to either issue for its form, substance or omission, lack of definition or explanatory instruction, or on account of any defect, omission or fault in pleading; therefore, these matters were waived. Rule 274.[1]

In our original consideration of the appeal, we overruled the bank's eighth point of error by which it contended the trial court erred in not disregarding the jury's answer to issue no. 1(a) because the same is so against the great weight and overwhelming preponderance of the evidence as to be unjust. 613 S.W.2d at 63. We adhere to that ruling.

Resultantly, the inquiry is whether the first issue alone or together with issue no. 3(a) submits the pleaded and disputed facts of conversion for the jury's resolution. It is at once apparent that neither of the issues, viewed singly or together, is cast in the usual form of a conversion issue. *See Waisath v. Lack's Stores, Inc., supra,* at 445–46. Indeed, in bringing this appeal, the bank stated that issue no. 1(a), with its companion issue no. 1(b),[2] "relate to the contention of the bank for reformation of the assignment of certificate of deposit A1938," a characterization not addressed by the Chesshirs until their motion for rehearing denominated issue no. 1(a) a conversion issue. But that does not answer the inquiry.

By authority of Rule 277, the trial court is to submit to the jury any pleaded group of facts supported by the evidence which controls the disposition of the case. *Wilson v. Remmel Cattle Co., Inc.,* 542 S.W.2d 938, 941 (Tex.Civ.App.—Amarillo 1976, writ ref'd n.r.e.). In this connection, these excerpts quoted from J. Pope and W. Lowerre, *The State of the Special Verdict— 1979,* 11 St. Mary's L.J. 1 (1979), with footnotes omitted and the page number of each excerpt placed in brackets, are instructive:

> The new rule [revised Rule 277] eliminated the earlier requirement that issues must be submitted distinctly and separately. Instead, the trial judge was given discretion to determine whether to submit issues broadly. It would no longer "be objectionable that a question is general or includes a combination of elements or issues." [1]

> Under the present rule, issues for the jury may, and ought to be, asked broadly. [3]

> Broad and global issues may now be submitted.... Trial judges, armed with more discretion in the submission of issues, are better able to command the form that the court's charge will take, knowing that there is more than one fair way to try a case. [55]

The teaching of these excerpts and of opinions in cases speaking to broad issues is that the language of Rule 277 is being taken and applied literally.

Under these guidelines, a perusal of the issues reveals a submission of the disputed fact regarding conversion, albeit broadly in a combination of elements, and the jury's determination, by virtue of its answers, that the bank's action was unauthorized

1. All rules cited are the Texas Rules of Civil Procedure.

2. Special issue no. 1(b) was conditionally submitted thusly:

 If you have answered the above question, "It was their agreement", and only in such event, you will answer the next question.

 (b) Do you find from a preponderance of the evidence that words to provide that such certificate was to be used as collateral security for the SBA-guaranteed loan of the Bank to Donald Rhea Chesshir were omitted from such assignment by mutual mistake?

 In answering this question, you are instructed that a "MUTUAL" mistake is a mistake that is common to both parties.

 Following the court's instructions, the jury did not answer this issue. On original submission, we overruled the bank's complaint, a part of its eighth point of error, made to the jury's failure to answer the issue, 613 S.W.2d at 63, another ruling to which we adhere.

and wrongful. Obviously the trial court was of that mind, for there is no other basis for its judgment of liability for actual damages. Yet, that does not conclude the appeal.

The Chesshirs had the burden to go further and establish the third element, the value of the property converted. Although the date of the conversion of the certificate and its applicability, if any, to Mr. Chesshir's $4,000 guaranty note, both of which bear on the value of the property converted, are not without dispute in the evidence, the value issue was not submitted to the jury.

■ Notwithstanding, if, as here, the court submits a part of the elements necessary to sustain a ground of recovery and, without objection, omits another element for which there is evidence to support a finding thereon, the issue itself is not waived; rather, by authority of Rule 279, the parties are considered on appeal to have agreed to waive a jury trial on the unsubmitted element and to have submitted it to the court for resolution. In this event, the rule provides that the trial court, absent written findings filed on the omitted element at the request of any party, shall be deemed to have decided the omitted factual issue in such manner as to support the judgment rendered. *Wilson v. Remmel Cattle Co., Inc., supra*, at 942.

■ In this record there is evidence to support the court's finding of value recited in its judgment and, therefore, the court is deemed to have decided the omitted issue of value in support of that judgment. The resolution of the issue of value completes the establishment of all the elements of the Chesshirs' cause of action for conversion.

Accordingly, the trial court's judgment is reformed so as to eliminate from the monetary recovery decreed the excess of the actual damages, *i.e.*, $26,041.68, which was included as trebled damages under the DTPA action we have held is not maintainable. As reformed, the judgment is affirmed.

## ON MOTIONS FOR REHEARING

The Bank and the Chesshirs each have filed a motion for rehearing, seeking the withdrawal of our 31 March 1982 judgment and rendition of a more favorable judgment. We are not persuaded by the motions to disturb our judgment.

■ With the first two of four points of error, the Chesshirs reargue their contention of entitlement to recover on their DTPA action, the same contention we considered and found lacking on original submission and rehearing. Upon further consideration, we adhere to our former determination that the Chesshirs were not "consumers" who could bring an action on the certificate of deposit transaction under the DTPA. 613 S.W.2d at 62–63. It seems significant that the Supreme Court, instead of accepting the contention and affirming the trial court's judgment, remanded the cause for our consideration of the conversion cause of action. 620 S.W.2d at 102. The first two points are overruled.

■ By point of error three, the Chesshirs complain of our administratively taxing two-thirds of the costs against them. The apportionment of costs was made because their recovery under the trial court's judgment was reduced approximately two-thirds on appeal. *Stevenson v. Sherman*, 231 S.W.2d 506, 513 (Tex.Civ.App.—Dallas 1950, writ ref'd). The point is overruled.

■ The Chesshirs utilize their fourth point to contend, as we understand their argument, that they were entitled to recover exemplary damages in their conversion action upon the special issue finding authorizing treble damages under the DTPA. With commendable candor, they concede that they neither requested the submission of or a jury finding on exemplary damages, and that they have found no authority to sustain their contention. Given this situation, it suffices to state that exemplary damages, being in the nature of an independent ground of recovery, are waived in the absence of a request for the submission thereof. *Holland v. Lesesne*, 350 S.W.2d 859, 865 (Tex.Civ.App.—San Antonio 1961, writ ref'd n.r.e.). The point is overruled.

The Bank's first seven of its eight points of error constitute its attack on our 31 March 1982 judgment, and the supporting rationale expressed, decreeing recovery for

**748**

the Chesshirs on their conversion cause of action. After a careful review of the Bank's complaints, we remain convinced of the correctness of our judgment rendered on remand, and overrule the seven points.

By its eighth point, the Bank contends that we erred in not eliminating from the judgment the attorney's fees awarded by the trial court. The Bank cites *Jay Fikes and Associates v. Walton*, 578 S.W.2d 885, 888 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.), for the principle that, in a conversion action, attorney's fees are not recoverable as actual or exemplary damages.

Notwithstanding, the trial court's judgment recites that the amount of attorney's fees awarded was stipulated and agreed in open court between the parties and accepted by the court. Prior to its present motion for rehearing, the Bank did not complain, by point of error or otherwise, of its adjudged liability for attorney's fees. The point of error raised for the first time in the Bank's motion for rehearing comes too late for consideration. *Watson v. Glens Falls Insurance Company*, 505 S.W.2d 793, 797 (Tex.1974). The eighth point is overruled.

The motions for rehearing are overruled.