

In The

Court of Appeals

Seventh District of Texas at Amarillo

_____

No. 07-12-00007-CV
_____

WES MASON AND PAM MASON, APPELLANTS

V.

KEITH MASON AND MEGAN MASON, APPELLEES

On Appeal from the 100th District Court
Donley County, Texas
Trial Court No. DCV-09-06600; Honorable Stuart Messer, Presiding

January 13, 2014

MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellants, Wes Mason and his wife, Pam Mason, appeal the trial court's judgment following a jury trial awarding Appellees, Megan Mason and her then husband, Keith, $90,000 plus interest and attorney's fees.[1] By four issues, Wes and Pam contend (1) the evidence is legally insufficient to support the finding of enhanced

---

[1]Keith is Wes and Pam's son. During the proceedings, Keith and Megan divorced and as part of the decree, Keith assigned his interest in the judgment to Megan. The assignment, however, does not operate to dispose of Keith as an Appellee in this appeal.

market value caused by construction of a permanent improvement to the land; (2) Keith and Megan waived their independent ground of recovery for unjust enrichment when no element of unjust enrichment was requested or submitted to the jury; (3) Keith and Megan are not entitled to recover attorney's fees for unjust enrichment, or alternatively, the evidence established conclusively that the attorney's fees awarded were too high; and (4) Keith and Megan are not entitled to recover prejudgment interest when they did not plead for it, or alternatively, the prejudgment interest was incorrectly calculated. By their brief, Keith and Megan concede issue three and agree attorney's fees are not recoverable in a claim for unjust enrichment. They consent to a removal of the award from the judgment.[2] By reply brief, Wes and Pam expound on their original arguments and challenge certain assertions made by Keith and Megan. Based on Keith and Megan's concession, we modify the trial court's judgment by deleting the award of attorney's fees. We also modify the amount of prejudgment interest awarded. In all other respects, the judgment is affirmed.

## BACKGROUND

Wes and Pam are the record owners of 160 acres in Donley County. The acreage is divided into two tracts of eighty acres each and is designated as their homestead. Believing that Wes and Pam had gifted eighty acres referred to as the north tract to her and Keith, Megan executed an agreement with Arrow Barn Builders to construct a custom horse barn which she and Keith would use to train horses and run a

---

[2]The award of attorney's fees provided for $15,000 through trial, $7,500 in the event of an unsuccessful appeal to this Court and $2,500 in the event of an unsuccessful appeal to the Texas Supreme Court.

2

horse-cutting business. The loan for the project was secured 100 percent by a certificate of deposit owned by Megan's mother. With Wes and Pam's full knowledge, Megan proceeded with her plans for the barn, a permanent improvement with a concrete slab, plumbing and electricity.

The builder engaged Old Pal Corporation to level the ground to prepare for construction of the barn. On Friday, May 2, 2008, Old Pal delivered a motor grader to the north tract and locked it. The next Monday, when a worker arrived to begin grading the property, he discovered the grader had been used by Wes without Old Pal's permission and that it had been damaged trying to remove tree stumps. Old Pal had to rent a grader to perform the work and also had to arrange for repair of the damaged grader. A demand for the expense of repair to the grader was made against Wes. When he did not pay it, Old Pal filed the original pleading in this proceeding on February 26, 2009, alleging a negligence action against Wes and Megan. When Megan later called Old Pal to inquire about the grader, she was informed for the first time that suit had been filed. She then hired counsel and on November 30, 2009, filed a cross-claim against Wes asserting he was acting neither as her agent nor employee, and she also filed a third-party claim against Wes's wife, Pam.

By her pleadings, Megan also alleged the following causes of action: (1) trespass to try title, (2) declaratory judgment enforcing the parol gift of the north tract and (3) if title in the north tract remained with Wes and Pam, unjust enrichment if they were allowed to retain the full value of the improvement without repayment.

3

Keith intervened in the suit aligning with Megan's interests. They alleged Wes and Pam fraudulently represented the gift of the north tract to them and continued to promise a deed. However, in July 2009, Wes and Pam negotiated a refinancing loan with First State Bank of Miami and represented they were the owners of the north tract. Megan and Keith asserted Wes and Pam had full knowledge of their intent to erect an improvement on the north tract. That knowledge notwithstanding, Wes locked Megan and Keith out of the north tract thereby preventing access to the property. Megan and Keith added a fraud claim against Wes and Pam and a claim for declaratory judgment against First State Bank of Miami alleging it did not have a valid lien on the north tract because Megan and Keith had no actual knowledge of a loan or purported lien on the north tract.[3]

After partial settlement of the claims pertaining to Old Pal and First State Bank of Miami, the case proceeded to a jury trial on April 26, 2011. By its answers to questions in the charge, the jury found (1) Wes and Pam did not make a parol gift of the north tract to Megan and Keith, (2) the permanent improvement made to the market value of the north tract was $90,000 and (3) Wes and Pam did not commit fraud against Megan and Keith. On October 5, 2011, the trial court entered judgment that Megan and Keith recover from Wes and Pam the sum of $90,000, plus prejudgment interest in the amount of $8,593.15. The judgment further provided for the recovery of attorney's fees. Wes and Pam now challenge that judgment.

---

[3]Neither Old Pal nor First State Bank of Miami are parties to this appeal.

**ISSUE ONE**

Wes and Pam contend the evidence is legally insufficient to support the finding of $90,000 in enhanced market value caused by construction of a permanent improvement to the land. They assert Travis Lowe's expert opinion was unreliable and therefore constituted no evidence to support the jury's award. We disagree.

**STANDARD OF REVIEW**

In reviewing the legal sufficiency of the evidence, we must consider the evidence in the light most favorable to the fact finder's decision and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not. *Id.* at 827. Evidence is legally sufficient if it would enable a reasonable and fair minded person to reach the finding under review. *Id.*

When a party challenges the legal sufficiency of an adverse finding on an issue for which it did not have the burden of proof, it must demonstrate there is no evidence to support the adverse finding. *Exxon Corp. v. Emerald Oil & Gas Co., L.P.,* 348 S.W.3d 194, 215 (Tex. 2011). Such a no-evidence challenge will be sustained when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *Jelinek v. Casas*, 328 S.W.3d 526, 532 (Tex. 2010) (citing *City of Keller*, 168 S.W.3d at 810). More than a

5

scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) (quoting *Merrell Dow Pharms. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). Evidence does not exceed a scintilla if it is so weak as to do no more than to create a mere surmise or suspicion that the fact exists. *Id.* As long as the evidence falls within the zone of reasonable disagreement, this Court may not invade the fact finding role of the jurors, who alone determine the credibility of the witnesses, the weight to be given their testimony and whether to accept or reject all or a part of their testimony. *City of Keller*, 168 S.W.3d at 822.

An expert's testimony must be relevant to the issues and based upon a reliable foundation. TEX. R. EVID. 702. Expert testimony is unreliable if "there is too great an analytical gap between the data the expert relies upon and the opinion offered." *Enbridge Pipelines* (*E. Tex.*) *L.P. v. Avinger Timber*, *LLC*, 386 S.W.3d 256, 262 (Tex. 2012); *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 627 (Tex. 2002). If an appraiser utilizes improper methodology or misapplies established rules or principles, the resulting testimony is unreliable and must be excluded. *Zwahr*, 88 S.W.3d at 631.

An expert's opinion must be grounded in a sound evidentiary basis. *Jelinek*, 328 S.W.3d at 536. "[I]f no basis for the opinion is offered, or the basis offered provides no support, the opinion is merely a conclusory statement and cannot be considered probative evidence, regardless of whether there is no objection. '[A] claim will not stand or fall on the mere *ipse dixit* of a credentialed witness.'" *City of San Antonio v. Pollock*, 284 S.W.3d 809, 818 (Tex 2009).

6

There are three methodologies for determining fair market value: (1) comparable sales, (2) actual costs and (3) income production. *City of Harlingen v. Estate of Sharboneau*, 48 S.W.3d 177, 182 (Tex. 2009). In a comparable sales approach, the appraiser finds data for sales of similar properties and makes upward or downward adjustments to the sales prices based on differences in the subject property. *Id.* When comparable sales figures are lacking or the method is otherwise inadequate as a measure of fair market value, courts have accepted testimony based on the cost approach. *Id.* at 183. The cost approach, which looks to replacement cost, is best suited for valuing improved property that is unique in character and not frequently exchanged on the marketplace. *Religious of the Sacred Heart v. City of Houston*, 836 S.W.2d 606, 616 (Tex. 1992). While the cost method takes the property's depreciation into account, it still "tends to set the upper limit of true market value." *Estate of Sharboneau*, 48 S.W.3d at 183. The income approach is appropriate when the property would, in the open market, be priced according to the income that it already generates. *Id.* An appraisal method is only valid if it produces an amount a willing buyer would actually pay to a willing seller. *Id.*

Real estate appraiser, Travis Lowe, testified as an expert for Megan and Keith. His appraisal experience dates back to 1983 and in 1991, he became a state certified general appraiser which certified him to appraise any kind of real property. He was hired to appraise the north tract with and without the barn. He testified he made a physical inspection of the property, studied the floor plan, took photographs, conducted research and applied the appropriate methodologies to formulate his opinion. He

7

described the barn as having a concrete slab, kitchen, bathroom, electricity, plumbing, stalls and a round pen.

Lowe testified he analyzed the highest and best use of the north tract to be agricultural or recreational. He used the comparable sales method to value the eighty-acre north tract without the barn. He compared the north tract to four properties all located in Donley County and based on his summaries, determined the fair market value of the north tract to be $72,000.

The first comparable property he looked at was a 79.96-acre tract near the north tract which sold in 2009 for $64,000. It did not have a well or electricity so adjustments were made. The second comparable property was a tract of 631 acres which sold in 2008 for $757,860. Part of the tract was on a river bed and had a live spring-fed pond. He explained live water increases the value of the land so he made downward adjustments based on this property. The third comparable property was a 160-acre tract that sold in 2007 for $825 an acre. It had poor fences and a non-functioning windmill so a slight adjustment was made. The fourth and final comparable property was a 360-acre tract that sold in 2008 for $360,000. It had an old barn, a well and adequate fences. He made a five percent downward adjustment for the well. Based on the comparable properties, Lowe calculated the range of the eighty-acre north tract to be between $68,000 and $72,000 and determined the higher figure as the fair market value of the unimproved land based upon the condition of the property.[4]

---

[4]Market value is "the price property will bring when offered for sale by one who desires to sell, but is not obliged to sell, and is bought by one who desires to buy, but is under no necessity of buying." *City of Harlingen v. Estate of Sharboneau*, 48 S.W.3d 177, 182 (Tex. 2009).

Regarding the value of the north tract with the barn, Lowe testified that due to a lack of similar properties and the newness of the barn, he applied the cost methodology. He was provided the construction contract and change orders to determine the actual cost of building the barn.[5] He did not use a handbook or manual in determining the value of the barn. In his opinion, with a newer property, the actual cost is "as good as the data gets." He then factored in depreciation on the two-year old barn and calculated the depreciated value of the improvements to be $124,018. He then added $20,000 to that figure for "in-place value of some of the improvements" such as preparation of the land, the pens and the sand added to the pens. The total amount for the improvements was $144,018. Adding the $72,000 value of the north tract, he determined the fair market value of the land with the barn to be $216,018.[6]

During cross-examination, Lowe was questioned on the value of the barn of $45,000 in the Donley County tax rolls and the bank's total valuation of $250,000 for both the north and south tracts with improvements. He testified that tax rolls are less reliable than a physical inspection. He could not speak to the bank's appraisal because he did not appraise the south tract or any improvements on it. He explained he did not apply the income approach in valuing the barn because it was vacant when he appraised it. Wes and Pam's expert, who did not testify, used a valuation that came from a handbook, and Lowe was unaware of whether a physical inspection of the property had been made.

---

[5]The original contract price for the barn was $186,690.50. Megan testified that with change orders the final cost of the barn was $220,005.

[6]In his testimony, Lowe rounded the figure down to $216,000.

Lowe's testimony established his thoroughness in appraising the north tract with and without improvements. His testimony was grounded in a sound evidentiary basis, was detailed and therefore, not conclusory. We disagree with Wes and Pam that Lowe's expert opinion was unreliable and constituted no evidence to support the jury's award for enhanced value to the north tract. Considering the evidence in the light most favorable to the jury's decision and indulging every reasonable inference that would support the award, we conclude the evidence is legally sufficient to support the judgment. Issue one is overruled.

**ISSUE TWO**

By issue two, Wes and Pam contend Keith and Megan waived their independent ground of recovery for unjust enrichment when no element of unjust enrichment was requested or submitted to the jury. We disagree.

Unjust enrichment is an equitable theory of recovery where a party has obtained a benefit from another by fraud, duress or the taking of an undue advantage, *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992), and the receipt of those benefits is not governed by contract. *Lone Star Steel Co. v. Scott*, 759 S.W.2d 144, 154 (Tex. App.—Texarkana 1988, writ denied). It is not a proper remedy merely because "it might appear expedient or generally fair that some recompense be afforded for an unfortunate loss . . . ." *Heldenfels Bros., Inc.*, 832 S.W.2d at 42.

In her pleadings, Megan alleged unjust enrichment if Wes and Pam retained the full value of the improvement without repayment. Megan had the burden to present evidence on the elements of her claim. *Ramos v. Frito-Lay, Inc.*, 784 S.W.2d 667, 668

10

(Tex. 1990). Question No. 3 of the charge asked the jury to determine "what *enhancement*, if any, in the market value of the North Tract was caused by the construction of permanent improvements by Keith or Megan Mason?" (Emphasis added.) Wes and Pam objected to submission of the question on the ground there was no evidence of enhanced value without Lowe's expert testimony.[7] The objection was overruled and the jury answered $90,000.

Wes and Pam, relying on Rule 279 of the Texas Rules of Civil Procedure and other authorities, argue Keith and Megan waived unjust enrichment as a theory of recovery by failing to ask the jury a liability question or give a clarifying instruction. While we agree with Wes and Pam that failure to submit or request an entire ground of recovery from the charge can lead to procedural default, that is not the situation before us. *Ramos*, 784 S.W.2d at 668. An entire theory of recovery is not waived where the charge omits issues out of a cluster of issues necessary to support the theory. *Turner, Collie & Braden, Inc. v. Brookhollow*, 642 S.W.2d 160, 165 (Tex. 1982). In that situation, the parties waive a jury trial on the unsubmitted elements thereby submitting them to the trial court for resolution. *First State Bank, Morton v. Chesshir*, 634 S.W.2d 742, 747 (Tex. App.—Amarillo 1982, writ ref'd n.r.e.). Without written findings on the omitted elements, the trial court is presumed to have decided the omitted issues to support the judgment rendered. *Id.*

The jury was asked to determine the value of the enhancement to the north tract after finding Wes and Pam did not make a parol gift of the tract nor commit fraud

---

[7]We have determined that Lowe's testimony was reliable and therefore competent evidence to support the jury's award.

11

against Keith and Megan. Wes and Pam testified they knew Megan intended to construct a barn on the north tract for her and Keith to run a horse training facility. Pam had accompanied Megan to two banks seeking loans for the project and knew Megan was turned down because the land was not in her name. Wes and Pam acknowledged the barn was paid for by Megan with a loan secured by Megan's mother's certificate of deposit. Megan also continued to pay the utilities for the barn, despite being prohibited from entering the north tract or using the barn she paid to have built. There was also testimony that Megan kept current with her loan payments to the bank.

Although the jury did not find Wes and Pam committed fraud or exercised duress, there is sufficient evidence that Wes and Pam took undue advantage of Megan by allowing her to build a permanent improvement on property they never intended to deed to her and then subsequently, locked her out. The improvements paid for by Megan led to enhancement of the north tract and a substantial benefit to Wes and Pam. We conclude the omitted elements are deemed found against Wes and Pam because there is evidence to support they obtained a benefit by taking undue advantage of Megan. We also find the trial court presumed to decide the omitted elements in support of the judgment. Issue two is overruled.

### ISSUE FOUR

By their fourth issue in their original and reply briefs, Wes and Pam contend Keith and Megan are not entitled to recover prejudgment interest when they did not plead for it, or alternatively, the prejudgment interest was incorrectly calculated. Additionally, they assert prejudgment interest should not have been awarded because Keith and Megan's

12

post-verdict request for prejudgment interest was not granted nor ruled upon. We disagree that prejudgment interest was not recoverable, but agree it was incorrectly calculated.

As a general rule, a plaintiff is required to plead for prejudgment interest sought at common law as an element of damages, whereas statutory or contractual interest may be predicated on a prayer for general relief. *See Republic National Bank v. Northwest National Bank*, 578 S.W.2d 109, 116-17 (Tex. 1978). Pleadings may be amended post-verdict to allow prejudgment interest. *See Benavides v. Isles Constr. Co.*, 726 S.W.2d 23, 26 (Tex. 1987). A trial court's refusal to allow a post-verdict amendment for prejudgment interest has been held to be an abuse of discretion. *Id.* Allowance of a post-verdict amendment seeking prejudgment interest does not work a surprise or prejudice as a matter of law. *Firefighters' & Police Officers' Civil Serv. Comm'n v. Herrera*, 981 S.W.2d 728, 734-735 (Tex. App.—Houston 1998, pet. denied) (citing *Benavides*, 726 S.W.2d at 26).

On June 22, 2011, Keith and Megan filed a post-verdict motion adding a claim for prejudgment interest. The trial court's judgment signed on October 5, 2011, recites that Keith and Megan have and recover from Wes and Pam prejudgment interest at the rate of five percent per annum in the amount of $8,593.15. The trial court's award of prejudgment interest is an implicit ruling granting Keith and Megan's motion. *See* TEX. R. APP. P. 33.1(a)(2)(A). *See also In re Commitment of Hill*, 334 S.W.3d 226, 229 (Tex. 2011). We conclude Keith and Megan are entitled to recover prejudgment interest.

13

We now turn to Wes and Pam's alternative argument that prejudgment interest was incorrectly calculated. Prejudgment interest accrues on the amount of a judgment during the period beginning on the earlier of the 180th day after the date the defendant receives written notice of a claim or the date suit was filed and ends on the day preceding the date judgment was rendered. TEX. FIN. CODE ANN. § 304.104 (West 2006). The interest rate is five percent a year. *Id.* at § 304.003(c)(2). Megan made her claim for unjust enrichment on November 30, 2009, in her original answer, cross-claim and third-party claim, and judgment was rendered on October 5, 2011. The trial court's judgment provides for prejudgment interest in the amount of $8,593.15.

Calculating from the earlier date of November 30, 2009, to October 4, 2011, the day preceding the date judgment was rendered, Keith and Megan are owed prejudgment interest for 673 days. The $90,000 award times five percent yields $4,500 per year divided by 365 days a year resulting in $12.3287 per diem. That amount times 673 days results in prejudgment interest rounded up to $8,297.26. We conclude the amount of prejudgment interest in the judgment must be reduced by $295.89. We modify the award of prejudgment interest to reflect Keith and Megan are entitled to prejudgment interest of $8,297.26.[8] Issue four is overruled in part and sustained in part.

## CONCLUSION

Accordingly, based on Keith and Megan's concession to issue three, the trial court's judgment is modified to delete the award of attorney's fees. The trial court's

---

[8]Post judgment interest begins to accrue from the date the original judgment is entered, i.e., October 5, 2011. *See Phillips v. Bramlett*, 407 S.W.3d 229, 239 (Tex. 2013).

14

judgment is also modified to decrease the award of prejudgment interest to $8,297.26.

In all other respects, the trial court's judgment is affirmed.


Patrick A. Pirtle
Justice