**FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF SAN ANTONIO, Texas, Appellant,**

v.

**C.G. RITENOUR, et ux., Appellees.**

**No. 13–85–301–CV.**

Court of Appeals of Texas, Corpus Christi.

January 16, 1986.

Rehearing Denied Jan. 30 and Feb. 20, 1986.

Wm. C. Church, Jr., Kampmann & Church, Miles Buttery, San Antonio, for appellant.

Thomas C. Hall, John C. Blanton, Stephen C. Caspers, San Antonio, for appellees.

Before UTTER, KENNEDY and SEER-DEN, JJ.

## OPINION

UTTER, Justice.

Appellant, First Federal Savings & Loan Association of San Antonio (First Federal), appeals from a jury verdict and judgment entered by the trial court pursuant to the Texas Deceptive Trade Practices Act (DTPA).[1]

Appellee and his wife (Intervenor) purchased a six month certificate of deposit from First Federal on December 12, 1980. This certificate of deposit was renewed on June 12, 1981. Both certificates of deposit were issued to Mr. or Mrs. C.G. Ritenour, jointly.

On August 3, 1981, appellee went to an employee of First Federal to discuss a personal matter which he felt affected the couple's funds on deposit at First Federal. He informed the employee that he wished to prevent his wife from withdrawing funds without his prior approval. Appellee was advised that a "hold" could be placed on the account which would require both of their signatures to make a withdrawal.

After the execution of the "hold," Intervenor, acting alone, withdrew $1,400.00, pledged the certificate of deposit as collateral for a loan of $3,000.00 and subsequently, after $3,000.00 was applied to pay off the $3,000.00 loan, withdrew the balance of the certificate of deposit, $6,815.96, in the form of a cashier's check payable to Mr. and Mrs. C.G. Ritenour. The total amount dissipated by Intervenor was $11,215.96.

Upon learning of First Federal's failure to comply with the "hold," appellee filed this lawsuit alleging that First Federal had violated the DTPA by representing to him that a "hold" could be placed on the certificate of deposit account. Mrs. Ritenour entered the lawsuit as an Intervenor and

1. TEX.BUS. & COMM.CODE ANN. § 17.41 et. seq. (Vernon Supp.1985).

First Federal filed a "cross-claim" against her and appellee, seeking indemnity from the community estate of appellee and Intervenor. Thereafter, First Federal filed a third party action against Mercantile Bank & Trust (Mercantile), the bank in which Intervenor deposited the $6,815.96 cashier's check. Mercantile was granted a summary judgment which was severed into a separate cause.

The jury found that (1) First Federal's representation that the "hold" would require both signatures was a false, misleading or deceptive act, (2) that the misrepresentation was a producing cause of appellee's damages, and (3) that the misrepresentation was committed knowingly. The jury found that appellee had suffered actual damages of $11,215.96.

The trial court awarded appellee an additional $2,000.00 as provided for by the jury verdict and § 17.50(b)(1) of the TEX. BUS. & COMM. CODE ANN. The trial court further entered a judgment for First Federal in the amount of $11,215.96 against Intervenor and also ordered that the two judgments "shall not be offset...."

▇▇▇ Whether or not a plaintiff is a "consumer" under the DTPA is a question of law to be determined by the trial court from the evidence. The trial court will not submit issues to the jury as to violations of the DTPA if it has determined that the plaintiff is not a consumer. Reed v. Israel National Oil Company, Ltd., 681 S.W.2d 228 (Tex.App.—Houston [1st Dist.] 1984, no writ); Ridco, Inc. v. Sexton, 623 S.W.2d 792 (Tex.App.—Fort Worth 1981, no writ). In the instant case, the trial court did submit issues as to violations of the DTPA, therefore, it can be presumed that the trial court determined that appellee was a consumer under the Act.

In its first point of error, First Federal contends that the trial court erred in entering a judgment under the DTPA because appellee was not a "consumer" as defined in the Act.

▇▇▇ In order to prevail on an action brought under the DTPA, one must be a "consumer." Kennedy v. Sale, 689 S.W.2d 890 (Tex.1985); Riverside National Bank v. Lewis, 603 S.W.2d 169 (Tex.1980). The Act defines "consumer" as "an individual ... who seeks or acquires by purchase or lease, any goods or services...." TEX. BUS. & COMM. CODE ANN. § 17.45(4) (Vernon Supp.1985); Riverside National Bank v. Lewis, 603 S.W.2d at 175–76.

The Supreme Court in Riverside defined "service" in the context of the DTPA as follows:

'action or use that furthers some end or purpose: conduct or performance that assists or benefits someone or something: deeds useful or instrumental toward some object.' This definition described 'services' in terms of 'action,' 'conduct,' 'performance' and 'deeds.' All of these synonyms demonstrate that services includes an activity on behalf of one party by another.

Riverside National Bank v. Lewis, 603 S.W.2d at 174.

Appellee contends that he was a consumer because he sought or acquired by lease or purchase "a full range of services" when he purchased the certificate of deposit from First Federal and when First Federal represented that it had placed a "hold" on the certificate of deposit account, it was providing a collateral service incidental to the certificate of deposit.

In First State Bank, Morton v. Chesshir, 613 S.W.2d 61 (Tex.Civ.App.—Amarillo 1981), rev'd. on other grounds, 620 S.W.2d 101 (Tex.1981) (reversed and remanded to the Court of Appeals to hear conversion claim), on remand, 634 S.W.2d 742 (Tex.App.—Amarillo 1982, writ ref'd. n.r.e.), plaintiffs purchased a certificate of deposit from defendant First State Bank, Morton. They pledged their certificate of deposit as collateral for a loan for their son. When their son defaulted on the loan, the bank cashed in the certificate of deposit and applied it to the delinquent loan. Plaintiffs brought a DTPA cause of action against the bank. They contended that they were consumers because "their purchasing of the certificate of deposit was a purchase of services from the bank." First State Bank, Morton v. Chesshir, 613

S.W.2d at 62. In holding that they were not consumers under the Act, the court stated that the mere purchase of a certificate of deposit is seeking "only money to be paid in the future." The court went on to say: "money is not 'goods' as defined by the DTPA, and the attempt to acquire money is not an attempt to acquire services as defined by the DTPA." The court concluded by stating:

> Accordingly, the Chesshirs did not seek or acquire either goods or services as defined by the DTPA in the certificate of deposit transaction and, thereby, were not consumers who could bring an action under ... the DTPA.

*First State Bank, Morton v. Chesshir*, 613 S.W.2d at 62, 63.

However, the court did note that:

> the Chesshirs do not contend that they sought or acquired, or that the bank provided, any other services in the transaction.

*Id.* at 62, fn. 3.

This is precisely what appellee contends in the case before us. Therefore, we must decide whether appellee purchased any services from First Federal when he purchased the certificate of deposit.

Although in *Riverside National Bank v. Lewis,* the Supreme Court held that an attempt to acquire money is not an attempt to acquire services as contemplated by the DTPA, *Riverside* at 175, they made the following comments:

> The argument that services existed in the lending of money, and in the process of determining whether to lend money, and were necessarily a part of the interest rate or purchase price of the loan, is not supported by the evidence adduced at trial. This argument, contained in the briefs, is merely hypothetical. There is nothing to support it in the Statement of Facts.
>
> Additionally, Lewis' sole complaint about the transaction concerned the Bank's failure to make him the loan. He

has made no complaint concerning the quality of these collateral activities that he now claims constitute a service. *In the absence of a claim concerning these collateral activities,* we hold that Lewis did not seek either "goods or services" as defined under the DTPA.[5]

\* \* \* \* \* \*

[5] Accordingly, we do not pass upon the question whether a bank's misrepresentation concerning its activities, such as *the availability of financial counseling,* the cost of processing a loan or the ability to pay a customer's monthly bills, could constitute a deceptive act *in connection with a sale of "services."* We only hold that where those activities are not the subject of the complaint, then the presence of such collateral activities in a transaction otherwise not covered by the DTPA does not subject the parties to liability under the DTPA. [Emphasis ours]

*Riverside National Bank v. Lewis*, 603 S.W.2d at 175.

There is evidence in the record which supports appellee's contention that he purchased services from First Federal when he purchased the certificate of deposit. Mr. Woodie Goodspeed, manager of the Savings Division and designated corporate representative of First Federal, testified that First Federal offers a broad range of services to the public, paid for out of profits made from depositors such as appellee. He stated that First Federal has a customer service department set up to handle problems with customers' savings accounts. He also agreed that the profits made by First Federal go to pay for such services as rendered to appellee.[2] There is no testimony in the record that appellee paid an additional fee for such counseling and advice which was given him. Therefore it follows that the need for such services for its customers was contemplated by First Federal by instituting a customer service department. This service became available to appellee and intervenor when they purchased the certificate of deposit from First Federal. The counseling and advice was available to customers of First Federal whether it was needed or not. In

---

**2.** Q: "And it pays the salary of Mary Fox when Charlie Ritenour comes in and says I've got a problem with my account. I want you to help me with it. What can I do. That is an example of a service that is paid for out of the profits of First Federal, correct?
A: Yes."

this instance, appellee needed the service of advice and counseling provided by First Federal to its customers. In addition to providing the service of advice and counseling to appellee, First Federal attempted to provide appellee a service which they could not legally provide, i.e., the placing of a "hold" on the joint account of appellee and intervenor.

■ We therefore hold that appellee purchased financial counseling services, collateral to the certificate of deposit, from First Federal at the time the certificate of deposit was acquired. *See La Sara Grain v. First National Bank of Mercedes,* 673 S.W.2d 558 (Tex.1984); *see also Fortner v. Fannin Bank in Windom,* 634 S.W.2d 74 (Tex.App.—Austin 1984, no writ); *Farmers and Merchants State Bank v. Ferguson,* 605 S.W.2d 320, 324 (Tex.Civ.App.—Fort Worth 1980), *aff'd. on other grounds,* 617 S.W.2d 918 (Tex.1981). Consequently, appellee was a consumer under the Act and was entitled to bring this cause of action. First Federal's first point of error is overruled.

In its second point of error, First Federal contends that the sum of $11,215.96 awarded to appellee was more than the actual damages sustained by him. Appellant has cited no case law to support its contention. The savings account contract states that the account is held in a joint tenancy with right of survivorship. It further provides that the "husband and wife hereby partition their respective community property interests in said account ... so that each ... shall have and hold as ... separate property an undivided one-half interest therein."

■ It is First Federal's position that since appellee and his wife partitioned the funds into separate property, then appellee only owned one-half of the funds on deposit and could only have been damaged in an amount equal to one-half of $11,215.96. The savings account contract states that "[t]hese accounts are regular Joint Tenancy accounts ... [wherein] [a]ny Joint Tenant, whose signature appears on the reverse hereof, is authorized to make withdrawals from this type of account." TEX. PROBATE CODE § 46(b)[3] allows married couples to partition existing and future funds into separate property and further provides that the funds so partitioned may be held in joint tenancies and pass by right of survivorship. The reason for requiring the partition into separate property is that a joint tenancy with right of survivorship cannot be created with community property in Texas. *McCarver v. Trumble,* 660 S.W.2d 595 (Tex.App.—Corpus Christi 1983, no writ). Each joint tenant takes full title to the property by the instrument creating the joint tenancy. *Calvert v. Wallrath,* 457 S.W.2d 376 (Tex.1970). Appellee, being a joint tenant with Intervenor in the certificate of deposit account, had full title and right to all funds on deposit. Therefore, appellee was damaged by First Federal's disbursement of said funds, contrary to its representation to appellee, in the amount of $11,215.96. First Federal's point of error number two is overruled.

■ In point of error number three, First Federal contends that the judgment awarded to appellee should have been offset as a matter of law against the judgment awarded to First Federal and against Intervenor because the former was a recovery on behalf of the community estate and the latter was against the community estate. We find that there is no evidence to support the judgment entered against Intervenor. As stated above, each joint tenant has the right to withdrawl the full amount on deposit in a joint tenancy account. First Federal admits in its counterclaim that Intervenor "was legally entitled to borrow on the savings account and/or to withdraw the total funds from the account." Mr. Goodspeed testified that: "Mrs. Ritenour was a joint owner of the account and had, as far as we're concerned, as much right to that account as Mr. Ritenour did." Having had a legal right to withdrawl the entire amount, and having done so in a legal manner, there is no basis for a judgment against her. As stated in *Montgomery v. Phillips Petroleum Co.,* 49

---

**3.** TEX. PROBATE CODE ANN. § 46(b) (Vernon Supp.1985).

S.W.2d 967 (Tex.Civ.App.—Amarillo 1932, writ ref'd.):

> The exercise of a right conferred by a valid contract in the manner provided by its terms cannot be the ground of an action.

First Federal's point of error number three is overruled. Intervenor's cross-point is sustained. The judgment entered against Intervenor is REVERSED.

In its fourth point of error, First Federal contends that it was error to grant Mercantile's Motion for Summary Judgment and to sever Mercantile from the main action.

■ A summary judgment for Mercantile was proper only if as a matter of law First Federal could not succeed upon its theory of recovery. *Marshall v. Garcia,* 514 S.W.2d 513 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd. n.r.e.). First Federal's argument is, in essence, that Mercantile is liable on the $6,815.96 check by virtue of its guarantee of appellee's absent endorsement. However, First Federal cites no authority upon which to base any such liability.

■ It is the movant's burden to establish as a matter of law his entitlement to summary judgment by conclusively proving that no genuine issue of material fact exists as to the cause of action or the defense asserted. *Delgado v. Burns,* 656 S.W.2d 428 (Tex.1983). However, once movant has done so, in order to avoid summary judgment being rendered against him, the non-movant must set forth sufficient evidence in his response to give rise to a genuine issue of material fact. *See Stevenson v. Reese,* 593 S.W.2d 828 (Tex. Civ.App.—Houston [14th Dist.] 1980, no writ); *see also City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671 (Tex.1979). The summary judgment evidence presented by Mercantile established as a matter of law that it was entitled to summary judgment.

■ The summary judgment proof showed: the check was made out to "MR. AND MRS. C.G. RITENOUR;" only Mrs. C.G. Ritenour endorsed the check and deposited it in the couple's joint account at Mercantile; Mercantile sent the check to First Federal through the clearing system for collection; First Federal (through Frost National Bank, the drawee bank) returned the check to Mercantile for further endorsement; Mercantile then placed the notation: "Deposited To The Account of The Within Named Payee. Absence of Endorsement Guaranteed." on the back of the check; the check was then returned to Frost National Bank and First Federal and was paid.

TEX. BUS. & COMM. CODE ANN. § 4.205 (Vernon 1968) provides:

> (a) A depository bank which has taken an item for collection may supply any indorsement of the customer which is necessary to title unless the item contains the words "payee's indorsement required" or the like. In the absence of such a requirement a statement placed on the item by the depository bank to the effect that the item was deposited by a customer or credited to his account is effective as the customer's indorsement.

The summary judgment proof established that Mercantile complied with § 4.205(a); thus proving that it was merely doing what the statute authorized it to do. *See generally Leinert v. Sabine National Bank,* 541 S.W.2d 872 (Tex.Civ.App.—Beaumont 1976, writ ref'd. n.r.e.); *Main Bank of Houston v. Davy Crockett Inn of New Braunfels, Inc.,* 531 S.W.2d 388 (Tex. Civ.App.—Austin 1975, no writ). Since Mercantile established its entitlement to summary judgment, it was encumbent upon First Federal to come forward with sufficient evidence to show that a fact issue existed. This First Federal failed to do. No summary judgment evidence was offered to show that the check "contain[ed] the words 'payee's indorsement required' or the like." Summary judgment for Mercantile was therefore proper. It follows that severance was also proper. *See Saxer v. Nash Phillips—Copus Co. Real Estate,* 678 S.W.2d 736 (Tex.App.—Tyler 1984, writ ref'd. n.r.e.). First Federal's fourth point of error is overruled.

Appellee has also filed a cross-point alleging that the trial court erred in apply-

ing an erroneous legal standard in determining the amount of attorney's fees to be awarded to him.

 The amount and reasonableness of attorney's fees is a question of fact involving various intangible factors. *Mack v. Moore,* 669 S.W.3d 415 (Tex.App.—Houston [1st Dist.] 1984, no writ). The trial court's award of attorney's fees will not be disturbed absent an abuse of discretion. *Id.* at 420. No findings of fact were filed to explain the basis upon which the trial court arrived at the award of attorney's fees. However, without regard to the trial court's comments in the record about what type of standard to use in determining attorney's fees, there is sufficient evidence to uphold the award as reasonable. Although three attorneys gave expert testimony as to reasonable attorney's fees, their testimony is not conclusive. *McFadden v. Bresler Malls, Inc.,* 526 S.W.2d 258 (Tex.Civ.App.—Austin 1975), *appeal after remand,* 548 S.W.2d 789 (Tex.Civ.App.—Austin 1977, no writ). The trier of fact can consider the nature and complexity of the case, the amount in controversy, the amount of time and effort required and the expertise of counsel in arriving at a reasonable amount as attorney's fees. *Mack v. Moore,* 669 S.W.2d at 419, 420. *Stegall v. Stegall,* 571 S.W.2d 564 (Tex.Civ.App.—Fort Worth 1978, no writ). The record reveals no abuse of discretion. The trial court's award of attorney's fees was reasonable. Appellee's cross-point is overruled.

The judgment of the trial court is REVERSED IN PART and AFFIRMED IN PART.

SEERDEN, J., dissents.

SEERDEN, Justice, dissenting.

I respectfully dissent. I would hold that appellee, Ritenour, was not a consumer within the definition of the Texas Deceptive Trade Practices Act. TEX. BUS. & COMM. CODE ANN., Sec. 17.45(4) (Vernon Supp.1986).

The Money Market Certificate was purchased by the Ritenours on December 12, 1980. That transaction was complete at that time. A deposit of money is not a transfer of goods. *Riverside National Bank v. Lewis,* 603 S.W.2d 169, 176 (Tex. 1980); *First State Bank, Morton v. Chesshir,* 613 S.W.2d 61 (Tex.Civ.App.—Amarillo 1981), *rev'd on other grounds,* 620 S.W.2d 101 (Tex.1981), *on remand,* 634 S.W.2d 742 (Tex.App.—Amarillo 1982, writ ref'd n.r.e.) (on conversion claim). In *Fortner v. Fannin Bank in Windom,* 634 S.W.2d 74 (Tex.App.—Austin 1982, no writ), Fortner was held to be a consumer because the bank provided the service of filing title papers for his car in connection with his loan. *Id.* at 76. However, in this case, appellee did not plead or prove that he sought or obtained any financial counseling, planning or any collateral service at the time he bought the certificate.

Appellee did not attempt to alter the effect of the certificate until August 3, 1981, when he requested the "hold." The transaction of August 3, 1981, does not fall under the D.T.P.A. because the "service" sought was not by "purchase or lease." *Hall v. Bean,* 582 S.W.2d 263, 265 (Tex.Civ. App.—Beaumont 1979, no writ); *Exxon Corp. v. Dunn,* 581 S.W.2d 500 (Tex.Civ. App.—Dallas 1979, no writ); *Russell v. Hartford Insurance Company,* 548 S.W.2d 737, 741 (Tex.Civ.App.—Austin 1977, writ ref'd n.r.e.).

This case is similar to *Thompson v. First Austin Co.,* 572 S.W.2d 80 (Tex.Civ.App.—Fort Worth 1978, writ ref'd n.r.e.), in which the appellant borrowed money from appellee and executed a note and deed of trust. Subsequently, the lender wrote appellant stating it would not foreclose under the deed of trust if certain conditions were met. Thereafter, the lender posted the property for foreclosure and suit was filed under the D.T.P.A. In holding that the borrowers were not consumers under the Act, the court stated that the borrowers had not purchased services from the lender but had purchased the use of money with their note and deed of trust. *Id.* at 81–82.

Since I do not believe Ritenour is a consumer, I would reverse the trial court's judgment and render judgment against appellee.