**NATIONAL BUGMOBILES, INC., D/B/A Texas Sanitation Co., Inc., Appellant,**

v.

**JOBI PROPERTIES, Appellee.**

No. 13–88–215–CV.

Court of Appeals of Texas, Corpus Christi.

May 25, 1989.

Rehearing Denied June 29, 1989.

O.F. Jones, III, Jones & Whitaker, Victoria, for appellant.

Bill W. Russell and J. Milton Chapman, McKay & Russell, Victoria, for appellee.

Before NYE, C.J., and BENAVIDES and SEERDEN, JJ.

## OPINION

BENAVIDES, Justice.

Jobi Properties, appellee, brought suit against National Bugmobiles, Inc., appellant, alleging breach of warranty, deceptive trade practices, and negligence for failing to treat appellee's home for termites free of charge as provided in a written warranty issued by appellant. The trial was before the court and, without stating the basis of its judgment, the trial court found in favor of the appellee and awarded actual damages with pre-judgment interest in the amount of $1,302.01.

On appeal, appellant asserts six points of error for review and appellee presents twelve cross-points. We affirm in part and reverse in part.

Appellant asserts by its first point of error that the judgment should be reversed because the trial court failed to make findings of fact and conclusions of law. Appellee contends that appellant did not preserve this point because appellant never timely or properly presented its requests for findings of fact and conclusions of law to the trial judge for a ruling. Tex. R.Civ.P. 296 provides that:

> In any case tried in the district or county court without a jury, the judge shall, at the request of either party state in writing his findings of fact and conclusions of law. Such request *shall be filed* within ten days after the final judgment is signed (emphasis ours).

Additionally, Tex.R.Civ.P. 297 requires that:

> When demand is made therefor, the court shall prepare its findings of fact and conclusions of law and file same within thirty days after the judgment is signed.... *If the trial judge shall fail so to file them, the party so demanding, in order to complain of the failure, shall, in writing, within five days after such date, call the omission to the attention of the judge,* whereupon the period for preparation and filing shall be automatically extended for five days after such notification (emphasis ours).

In the case now before us, the judgment was signed on February 1, 1988. On February 11, 1988, appellant filed with the court a written request for findings of fact and conclusions of law. After the trial judge failed to make the requested findings and conclusions, appellant timely filed its notification, or reminder, with the District Clerk of Victoria County regarding its request for findings of fact and conclusions of law. The record before us, however, does not indicate that appellant presented its initial request or subsequent reminder to the trial judge. Likewise, the record does not contain any findings of fact or conclusions of law.

Appellee, relying on *Lassiter v. Bliss*, 559 S.W.2d 353 (Tex.1977), argues that the initial request for findings of fact and conclusions of law, as well as the subsequent complaint for the court's failure to file such, must be presented to the judge him-

self.[1] It further argues that since the appellant never properly presented its request and reminder to the trial judge, it waived its right to complain on appeal about the court's failure to make such findings.

The Texas Supreme Court recently overruled *Lassiter* and all other cases, which required that the *initial request* for findings and conclusions be both *filed and presented* to the trial judge within ten days after the signing of the final judgment. *Cherne Industries, Inc. v. Magallanes,* 763 S.W.2d 768 (Tex.1989). The court noted that the plain language of Rule 296 does not require that the initial request be presented to the judge himself; rather it requires only that it "be filed within ten days after the final judgment is signed." *Id.* at 770.

The court, however, did not overrule its holding in *Lassiter* which requires the presentment of the subsequent reminder to the trial judge.[2] The plain language of Rule 297, as compared to Rule 296, requires that the party requesting the findings and conclusions call to the attention of the trial judge that he has failed to make such findings. The Supreme Court in *Lassiter* explained that the purpose of Rule 297 is to ensure that the judge is fully apprised of the initial request. *Id.* at 771.

In the instant case, appellant timely filed its initial request for findings of fact and conclusions of law thereby satisfying the requirements of Rule 296. However, after the court failed to file the requested findings and conclusions, appellant did not call the omission to the attention of the trial judge as required by Rule 297. Simply filing the subsequent reminder with the clerk does not satisfy the Rule 297 requirement that the demanding party call the omission to the attention of the judge. Therefore, we hold that since appellant did not properly remind the court of its failure

to make the requested findings and conclusions, it cannot now complain of such failure. Appellant's first point of error is overruled.

■ By its fifth point of error, appellant contends that the trial court erred in excluding defendant's exhibit number one, a business record. Appellee had successfully complained that a proper predicate had not been laid. We have reviewed the record and find no abuse of discretion in excluding the exhibit because appellant failed to establish that the document was in fact an admissible business record pursuant to Rule 803(6).

Moreover, appellant does not show this Court how it was harmed by the exclusion of such evidence. To the contrary, appellant argues in its brief that the document merely "confirms" other testimony which was admitted. Thus, the excluded document was merely cumulative of other evidence. A case will not be reversed for the exclusion of evidence which is merely cumulative of other testimony admitted. *Houston Lighting and Power Co. v. Sue,* 644 S.W.2d 835, 839 (Tex.Civ.App.—Corpus Christi 1982, writ ref'd n.r.e.). Appellant's fifth point of error is overruled.

Next, both appellant and appellee challenge the legal and factual sufficiency of the evidence. In determining the legal and factual sufficiency of the evidence, we will follow the well established test as provided in *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986.)

The record reflects that appellee is a partnership, owned by John and Billie Scheumack, engaged in the real estate business. In May of 1981, the Kornfuehrer estate (hereinafter referred to as the estate) owned a house located at 409 South Williams Street in Victoria, Texas. The Scheumacks were interested in purchasing the Williams Street property on behalf of

---

1. In *Lassiter,* the Texas Supreme Court held that merely filing the request and the subsequent reminder with the clerk of the court was insufficient. *Lassiter,* 559 S.W.2d at 358. The court held that both the initial request and the subsequent reminder must be presented to the trial judge. *Id.*

2. The court expressly refused to decide whether the subsequent reminder (a letter sent to the trial judge reminding him to file the requested findings) was proper under Rule 297. *Cherne,* 763 S.W.2d at 773.

appellee. At trial, Billie testified that when they entered into the contract to purchase the home, one of the conditions of sale was that a termite inspection be conducted. The record reflects that the representative of the estate contacted appellant and requested it inspect the house for termites.

Joseph Bassano, Jr., appellant's vice-president and chief executive officer, testified at trial that he and another employee inspected the house on Williams Street. According to Bassano, the house was empty when it was inspected. Bassano told the court that, during their inspection, they found evidence of both drywood and subterranean termites, which require different methods of treatment.[3] According to Bassano, the estate was informed that the inspection produced evidence of both types of termites, but the estate chose only to treat the subterranean termites. Accordingly, appellant treated the home for subterranean termites only.

On May 29, 1981, appellant issued a "perpetual retreatment warranty" in exchange for the consideration of $285.00 which warranted "that *any additional Termite treatment* called for within one year from the date of this Warranty *will be performed without charge to customer* (emphasis ours)." The warranty further provided that the customer could renew the warranty annually for a perpetual term by paying $50.00 a year on the anniversary date of the warranty, and that the warranty would lapse if the annual fee was not paid. It is important to note that the warranty did not expressly distinguish between the types of termites, and it did not state that it applied only to the treatment of subterranean termites.

Lester Meis, president of appellant, acknowledged that appellant issued the above warranty to the estate. At trial, both Bassano and Meis acknowledged that fifty percent of appellant's business involves inspecting homes that are on the market for resale. They testified that most financial institutions and potential buyers of homes require a termite inspection be conducted on the home before closing. Likewise, they told the court that these institutions and buyers require the seller to present at the closing either a termite warranty or letter stating the home is free of termites. Bassano testified that customarily the only things presented at a closing are either a warranty or a letter and a bill for services rendered.

Meis and Bassano testified that appellant customarily issues warranties in the name of the current owner or seller of the home. When the home is sold and appellant is notified, the warranty is automatically transferred to the buyer at no cost. They testified that the warranty is perpetual and can be transferred at any time after issuance as long as the annual renewal fee is paid. Meis testified that the warranty is transferable even if a home is sold three years after the warranty was issued.

Additionally, both witnesses admitted that it was possible a home buyer could believe that a warranty, similar to the one issued in the instant case, covered treatment for all types of termites. Meis and Bassano acknowledged that appellant now uses a warranty which expressly states which type of termite infestation is covered by the warranty.

Billie and John Scheumack testified at trial that at the closing they were provided only with the above warranty. They testified that they had no knowledge prior to buying the home that the house was infested with drywood termites. The Scheumacks told the court that they did not learn the house was infested until months later, when they tried to sell the home. Furthermore, they stated on the record that they relied on the warranty and would not have bought the property if they had known of the infestation. John testified that customarily in the real estate business termite warranties are automatically transferred to a home buyer. He testified that he was not aware that there were two types of termites and the warranty did not inform

---

**3.** Bassano explained that subterranean termites are relatively easy and inexpensive to treat; whereas, the treatment for drywood termites is more cumbersome and expensive since it requires placing a tent over the entire house.

him of such a difference. He also told the court that he had interpreted the warranty to mean that the home was free of all termites.

Duane Scheumack, an employee of Scheumack Realtors, testified that Scheumack Realtors listed the Williams Street home for re-sale. Duane testified that before the one year warranty period had expired, he informed appellant that appellee was the new owner and requested a termite inspection. Appellant inspected the home and informed Duane that it was infested with drywood termites. Duane testified that he then spoke with Lester Meis and requested that appellant treat the home free of charge since the warranty had not yet expired.

It was uncontroverted that Meis refused to treat the home unless appellee paid $2,200.00. In fact, Meis admitted that he refused to treat the home, even though he was notified within the one year warranty period that appellee was the new owner of the property, and that the house was infested with drywood termites. When Meis refused to fumigate the house free of charge, appellee paid another termite company $1,278.70 to treat the house.

By its fourth and sixth points of error, appellant argues that there was legally and factually insufficient evidence to support findings of negligence and causation. In its brief, appellee argues that the evidence sufficiently supports the trial court's finding of negligence and causation. However, appellee asserts by twelve cross-points that the trial court erred as a matter of law in failing to (1) find that appellant was liable for breach of warranty; (2) find appellant liable for deceptive trade practices; and (3) award double damages and attorney's fees when the evidence conclusively established such.[4]

Initially we note that both appellant and appellee assume that the trial court found that appellant was liable for negligence, and not for breach of warranty or decep-

tive trade practices. Apparently both parties base their assumption on the fact that the trial court failed to award attorney's fees and the additional damages allowed under the deceptive trade practices act. We cannot make such an assumption.

■ It is well-established that in a nonjury trial where no findings of fact and conclusions of law are filed or properly requested, it is implied that the trial court made all the necessary findings to support its judgment. *Roberson v. Robinson*, 768 S.W.2d 280 (Tex.1989); *In the Interest of W.E.R.*, 669 S.W.2d 716, 717 (Tex.1984); *Burnett v. Motyka*, 610 S.W.2d 735, 736 (Tex.1980). When a statement of facts is brought forward, these implied findings may be challenged by factual and legal sufficiency points the same as jury findings or a trial court's findings of fact. *Roberson*, 768 S.W.2d at 281. Where the implied findings of fact are supported by the evidence, it is the duty of the appellate court to uphold the judgment on any theory of law applicable to the case. *W.E.R.*, 669 S.W.2d 717; *Lassiter*, 559 S.W.2d at 358. This is so regardless of whether the trial court articulates the correct legal reason for the judgment. *Gulf Land Co. v. Atlantic Refining Co.*, 134 Tex. 59, 131 S.W.2d 73, 84 (1939).

As discussed above, the trial court in the instant case made no findings of fact or conclusions of law, and the record is silent concerning the basis of the court's judgment. It is therefore implied that the trial court made all the necessary findings to support its judgment, and the judgment of the trial court awarding appellee actual damages will be upheld under any theory supported by the evidence.

After reviewing the evidence introduced at trial, we agree with appellant's fourth point of error that the evidence does not support an award of actual damages under a negligence cause of action. *Cf. Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex.1986). The court's judgment

---

**4.** Appellant asserts by its second and third points of error that the trial court correctly found that it was not liable for breach of warranty and Deceptive Trade Practices. We note

that appellant incorrectly labels its assertions as "points of error." Since these "points" do not allege any error, we will construe them as a response to appellee's cross-points.

awarding actual damages, however, must be affirmed since the judgment must be upheld under any theory supported by the evidence and the evidence conclusively establishes liability pursuant to Tex.Bus. & Com.Code Ann. § 17.50(a)(2) (Vernon 1987) (DTPA).

Section 17.50(a)(2) of the DTPA provides that a consumer may maintain an action for breach of an express or implied warranty. When an express warranty is made and a promised service is not performed, a consumer is entitled to sue for breach of warranty under section 17.50. *FDP Corp. v. Southwestern Bell Telephone Co.,* 749 S.W.2d 569, 570 (Tex.App.—Houston [1st Dist.] 1988, writ denied).

In order to recover for breach of an express warranty pursuant to the DTPA a plaintiff has the burden to establish that (1) it was a consumer; (2) a warranty was made; (3) the warranty was breached; and (4) as a result of the breach, an injury resulted. *Superior Trucks, Inc. v. Allen,* 664 S.W.2d 136, 142 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.).

In the case at bar, it is uncontroverted that appellant issued an express warranty that any additional termite treatment called for within one year from the date of the warranty, would be performed without charge. Likewise, it was uncontroverted that appellant refused to honor the warranty when Meis refused to treat the home within the one year period without charge, even though it had been notified that appellee was the new owner. It was also established that as a result of appellant's failure to treat the home, the appellee had to pay another company $1,278.70 to exterminate the house.

Appellant, in its brief, argues that notwithstanding the above evidence, appellee did not establish its entitlement to recovery under the DTPA since appellee did not establish (1) that it was a consumer; (2) that appellant had breached the warranty; or (3) that the breach of the warranty was the producing cause of appellee's damages. We disagree.

■ Appellant asserts that appellee was not a consumer because it did not acquire or seek to acquire by purchase any services from it. In other words, appellant seems to argue that appellee did not acquire or purchase the warranty since the evidence establishes that it did not deal directly with appellee. Appellant also argues that the evidence does not support a finding that it breached a warranty because there was no privity of contract between it and the appellee, and there was no assignment of interest to the appellee. We find appellant's arguments are without merit.

Section 17.45(4) of the DTPA defines consumer as "an individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or services...."

Under the DTPA, a plaintiff is a consumer even if he does not "seek" the services of the defendant as long as he acquires the benefits of the service. *Kennedy v. Sale,* 689 S.W.2d 890, 892 (Tex.1985). Likewise, the DTPA does not require that the plaintiff himself purchase or lease the goods or services in order to qualify as a consumer. *Id.* It is well established that a *plaintiff's relationship to a transaction* establishes his standing as a consumer. *Flenniken v. Longview Bank & Trust, Co.,* 661 S.W.2d 705, 707 (Tex.1983); *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 538 (Tex. 1981). All that is required is that the goods or services sought or acquired by the plaintiff (consumer) form the basis of his complaint. *Flenniken,* 661 S.W.2d at 707.

In the instant case, the evidence establishes that appellee was a consumer even though it did not directly seek or purchase the services of the appellant. *Cf. Small v. Baker,* 605 S.W.2d 401, 403 (Tex.Civ.App.— Beaumont 1980, no writ) (the court of appeals held that a purchaser of a home who brought an action against a termite inspector under DTPA was a consumer under that act). The evidence supports a finding that appellee acquired the benefits under the warranty when it purchased the home and subsequently notified appellant that it was the new home owner. Both Meis and Bassano admitted that termite warranties were automatically transferred to a home

purchaser *whenever* it was notified of the sale. Meis further admitted that after the sale, it was notified by the Scheumacks that appellee was the new owner of the property. It is important to note that there was no evidence introduced at trial that appellant had to be notified of the sale within a particular period of time. Rather, the evidence showed that as long as the annual renewal fee was paid, the warranty was in effect and transferable. Therefore, the evidence supports a finding that appellee acquired the interest under the warranty.

Furthermore, the fact that appellee did not pay for appellant's services or deal with appellant directly is not determinative. It was appellant's failure to honor its warranty which formed the basis of appellee's complaint. Hence, the evidence conclusively supports the implied finding that appellee was a consumer.

Likewise, the fact that there was no privity of contract between appellant and appellee is irrelevant. *Flenniken,* 661 S.W.2d at 707. Privity of contract is not a consideration when deciding whether a plaintiff is a consumer under the DTPA and it is not necessarily required in order to establish a breach of an express warranty. *Flenniken,* 661 S.W.2d at 707; *Cameron,* 618 S.W.2d at 538.

■ There was sufficient evidence that appellant knew or should have known that the home could be sold in the future; therefore, it was foreseeable that a misleading warranty could be relied upon by financial institutions and/or a purchaser of the home. Accordingly, we hold that where an exterminator furnishes a perpetual, freely transferable express written warranty, which warrants that it will unconditionally treat any future termite infestation, knowing that the home owner is likely to one day use the warranty to induce the sale of the home, no privity between the buyer of the home and the exterminator is required. *Small,* 605 S.W.2d at 403; *Indust–Ri–Chem Laboratory, Inc. v. Par–Pack Company, Inc.,* 602 S.W.2d 282, 287–88 (Tex. Civ.App.—Dallas 1980, no writ).

■ We find the evidence was legally and factually sufficient to support the court's implicit findings that (1) appellee was a consumer; (2) appellant issued an express warranty that any termite infestation would be treated free of charge; (3) appellant breached the express warranty when it refused to fumigate the house free of charge; and (4) appellant's breach of the warranty caused appellee to incur damages of $1,278.70. Therefore, we overrule appellee's cross-points one through eight which contend that the trial court erred in failing to find breach of warranty and deceptive trade practices. We, likewise, overrule appellant's sixth point of error challenging the legal and factual sufficiency of the evidence to support the award of actual damages to appellee.

■ Appellee, by cross-points eleven and twelve, asserts the trial court erred as a matter of law in failing to award it $2,000.00 in additional damages pursuant to the DTPA. We agree.

Section 17.50(b)(1) of the DTPA provides that "each consumer who prevails may obtain the amount of actual damages found by the trier of fact. In addition, the court *shall award* two times that portion of the actual damages that does not exceed $1,000."

It is well settled that if the consumer prevails, the award of double damages is mandatory under the DTPA and such award is not discretionary with the trier of fact. Since the evidence in the instant case, conclusively establishes appellee's entitlement to actual damages under the DTPA, it was incumbent upon the court to award $2,000 (which is two times the amount of actual damages not in excess of $1,000) in additional damages. We sustain appellee's cross-points eleven and twelve.

Likewise, appellee argues by its ninth and tenth cross-points that the court erred in failing to award attorney's fees when the evidence conclusively established "that appellee's reasonable and necessary attorney's fees are $12,500.00 plus expenses of $302.37."

■ We agree with the appellee that the cause must be reversed because the DTPA provides that, in addition to actual and double damages, each consumer who prevails *shall be* awarded court costs and reasonable and necessary attorney's fees. Tex. Bus. & Com.Code Ann.Sec. 17.50(d) (Vernon 1987). However, we do not agree with appellee's argument that the evidence established as a matter of law that he was entitled to $12,802.37 for attorney's fees and expenses.

The record reveals that appellee's attorney testified at trial that his reasonable and necessary attorney's fees were $9,000 if the case was appealed to the court of appeals. Likewise, the record reveals that this testimony was uncontroverted. However, it is well established that the reasonableness of attorney's fees is a fact question which must be determined by the trier of fact. *Great American Reserve Insurance Co. v. Britton*, 406 S.W.2d 901, 907 (Tex.1966); *Smith v. Smith*, 757 S.W.2d 422, 424 (Tex.App.—Dallas 1988, writ denied); *First Federal Sav. & Loan Ass'n v. Ritenour*, 704 S.W.2d 895, 902 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.).

There are many factors that a trial court may consider in determining a reasonable amount of attorney's fees, such as the nature and complexity of the case, the amount in controversy, the amount of time and effort required and the expertise of counsel. *Smith*, 757 S.W.2d at 424–25. Expert testimony concerning the reasonableness of attorney's fees is not conclusive and the trial court is not bound by such testimony. *Smith*, 757 S.W.2d at 424–25; *First Federal Savings & Loan Ass'n*, 704 S.W.2d at 902. Therefore, we cannot say that as a matter of law, appellee is entitled to a specific amount of attorney's fees when the trial court has not yet considered the issue. Since the court did not award attorney's fees, the cause must be reversed and remanded so that the trial court can be allowed to determine what amount of attorney's fees are reasonable and necessary. Appellee's cross-points nine and ten are sustained.

In so far as the judgment denied the additional damages provided for in Tex. Bus. & Com.Code Ann. § 17.50(b)(1) (Vernon 1987), we reverse and render damages in an additional amount of $2,000 in favor of appellee. Additionally, we reverse and remand the cause to the trial court for the determination of reasonable and necessary attorney's fees which are to be awarded to appellee. The judgment of the trial court is otherwise affirmed.

### OPINION ON MOTION FOR REHEARING

Appellant, in its motion for rehearing, asserts that the majority opinion handed down in this case, conflicts with our opinion in *Anzaldua v. Anzaldua*, 742 S.W.2d 782 (Tex.App.—Corpus Christi 1987, writ denied). We disagree.

We have reviewed the record and the opinion rendered in *Anzaldua*, and we note that the question of whether the reminder properly called the omission to the attention of the judge was not an issue in that case. To the contrary, the record in *Anzaldua* clearly reveals that the subsequent reminder was timely submitted to the trial judge, and that the trial judge affirmatively acknowledged the receipt of the reminder.

Accordingly, we find that the majority opinion does not conflict with our holding in *Anzaldua*. Appellant's motion for rehearing is overruled.