Affirmed in Part, Reversed and Remanded in Part, and Majority and
Concurring Opinions filed July 24, 2003









Affirmed in Part, Reversed and Remanded in Part, and
Majority and Concurring Opinions filed July 24, 2003.

 

 

 

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO.
14-02-00243-CV

____________

 

JOYCE
ELLIOTT, Appellant

 

V.

 

KRAFT
FOODS NORTH AMERICA, INC., Appellee

 



 

On
Appeal from the 11th District Court

Harris
County, Texas

Trial
Court Cause No. 01-29856

 



 

M
A J O R I T Y   O P I N I O N








Appellant,
Joyce Elliott, brought suit against Kraft Foods North America, Inc., alleging
various causes of action arising from her biting onto a hard object in cereal
manufactured by Kraft.  In its final
judgment, the trial court awarded Elliott actual damages, but not attorney=s
fees.  In two points of error, Elliott
argues (1) the trial court abused its discretion by failing to award Elliott
her attorney=s fees for breach of an implied warranty under the Texas Deceptive
Trade Practices Act (DTPA) because Elliott presented conclusive evidence that
Kraft breached an implied warranty of merchantability and (2) harmful error
resulted from the trial court=s failure to file findings of fact and conclusions of law.  We affirm the trial court=s
judgment in part and reverse and remand in part for the determination of the
amount of attorney=s fees to which Elliott is entitled. 

Factual
and Procedural Background

Elliott
pleaded causes of action against Kraft for breach of common-law implied
warranties of merchantability and fitness for a particular purpose, breach of
express warranty, strict products liability under section 402A of the
Restatement (Second) of Torts, and violations of the DTPA.  Elliott sought recovery of attorney=s
fees under the DTPA.  The case was tried
to the court on February 13, 2002, and at the conclusion of trial, the court
announced its verdict for Elliott in the amount of $5,000, plus the costs of
court.  Elliott sought entry of judgment
on February 20, 2002.[1]  Elliott=s proposed judgment included an award of attorney=s
fees.  The trial court entered its final
judgment, awarding Elliott $5,000 in actual damages, as well as costs of court
and prejudgment and post-judgment interest. 
The judgment does not include an award of attorney=s
fees, nor does it state the basis of Kraft=s liability. 








Elliott
timely filed a request that the court file findings of fact and conclusions of
law.  See Tex. R. Civ. P. 296.[2]  Kraft also filed a request for findings,
along with its proposed findings of fact and conclusions of law.  Both parties timely filed notices of past due
findings of fact and conclusions of law. 
See Tex. R. Civ. P. 297.  This appeal was set for submission to this
Court on December 12, 2002.  On that
date, this Court issued an abatement order pursuant to rule 44 of the Texas
Rules of Appellate Procedure, requesting that the trial court file findings of
fact and conclusions of law, and include such findings of fact and conclusions
of law, along with any amendments timely requested by the parties, in a
supplemental clerk=s record on or before February 21, 2003.   The trial court did not comply with this
Court=s
order, and on February 27, the clerk of this Court sent a reminder letter to
the trial court repeating the request that it file findings of fact and
conclusions of law.  Our clerk=s
office also made more than one telephone call to the trial court making the
same request.  Despite this Court=s
order and reminder and the repeated attempts of the parties to secure the
findings of fact and conclusions of law to which they are entitled, the trial
court has failed to file findings of fact and conclusions of law.  We reinstated this appeal at the request of
appellant.

                                                                       Analysis

A.  Trial Court=s
Failure to File Requested Findings of Fact and Conclusions of Law

In
her second point of error, Elliott complains that the trial court=s
failure to file findings of fact and conclusions of law resulted in harmful error,
and requests that this Court reverse this matter and order the trial court to
file findings of fact and conclusions of law.








When
properly requested, a trial court has a mandatory duty to file findings of
fact.  See, e.g., Cherne Indus., Inc.
v. Magallanes, 763 S.W.2d 768, 772 (Tex. 1989).  We abated this appeal and requested the trial
court to file findings of fact and conclusions of law.  See Tex.
R. App. P. 44.4(b) (providing that court of appeals must direct trial
court to correct remediable error and must not reverse a judgment because of a
trial court=s failure to act if the trial court can correct the
omission).  Without any explanation, the
trial court did not do so.  If a trial
court does not file findings, it is presumed harmful unless the record
affirmatively shows that the appellant suffered no harm.  See, e.g., Tenery v. Tenery, 932
S.W.2d 29, 30 (Tex. 1996); Cherne Indus., 763 S.W.2d at 772.  Generally, in complicated cases with disputed
facts with two or more grounds for recovery or defense, the inference of harm
cannot be defeated.  Randall v.
Jennings, 788 S.W.2d 931, 932 (Tex. App.CHouston [14th Dist.]
1990, no writ).  If, however, the lack of
findings is harmless, we can affirm.  See
Tex. R. App. P. 44.1(a).  Error is harmful if it prevents a party from
properly presenting a case to the appellate court.  See Tex.
R. App. P. 44.1(a)(2); Tenery, 932 S.W.2d at 30.  The controlling issue is whether the
circumstances of the particular case would require an appellant to guess at the
reasons for the trial court=s decision.  Goggins
v. Leo, 849 S.W.2d 373, 379 (Tex. App.CHouston [14th Dist.]
1993, no writ).  

Although
we do not condone the trial court=s disregard for this Court=s order and ignorance of its mandatory duty to file findings of
fact and conclusions of law when properly requested, we conclude that the lack
of findings was harmless in this case. 
Elliott was able to properly present the issues on appeal, and this
Court is able to address and decide appellant=s first point of error.  See
Texas Dep=t of Pub. Safety v. Woods,
68 S.W.3d 179, 184 (Tex.
App.CHouston [1st Dist.] 2002, no pet.) (stating that because court was able to sustain
appellant=s second issue on legal sufficiency grounds, record
affirmatively reflected that appellant was not harmed by trial court=s
failure to file findings of fact and conclusions of law); see also, e.g.,
Birnbaum v. Alliance of Am. Insurers, 994 S.W.2d 766, 784 n.27 (Tex. App.CAustin
1999, pet. denied) (reasoning that party who briefed and identified theories by
which trial court might have arrived at its ruling was not harmed by court=s
failure to file findings of fact and conclusions of law).   Accordingly, we overrule Elliott=s
second point of error.

B.  Trial Court=s
Refusal to Award Attorney=s Fees   

In
her first point of error, Elliott argues that she is entitled to attorney=s
fees under the DTPA because she prevailed on her claims for breach of express
warranty and breach of the implied warranties of merchantability and fitness
for a particular purpose.  As a threshold
matter, we respond to Kraft=s contention that Elliott waived her first point of error.








Elliott
made a request for attorney=s fees during the trial, and the trial court sought
clarification as to which claim formed the basis of that request and noted on
the record the response by Elliott=s counsel.  Furthermore,
Elliott=s
proposed final judgment includes an award of attorney=s
fees.  The trial court=s
final judgment does not include such an award. 
Elliott properly preserved her complaint.  See Tex.
R. App. P. 33.1(a); see also, e.g., Emerson v. Tunnell, 793
S.W.2d 947, 947B48 (Tex. 1990) (ruling that prevailing party=s
request for judgment for recovery based on quantum meruit theory was preserved
for appeal when trial court entered judgment for lesser amount); Benjamin
Franklin Sav. Ass=n v. Kotrla, 751
S.W.2d 218, 224 (Tex.
App.CHouston [14th Dist.] 1988, no writ) (concluding that appellee=s
right to complain about denial of prejudgment interest in final judgment was
preserved by appellee=s motion for entry of judgment and proposed judgment which
contained award of prejudgment interest).

Turning
to the issue of whether Elliott is entitled to attorney=s
fees, we review a trial court=s decision of whether to award attorney=s
fees for abuse of discretion.  See
Hunt v. Baldwin, 68 S.W.3d 117, 135 n. 8 (Tex. App.CHouston [14th Dist.]  2001, no pet.).  To determine whether the trial court abused
its discretion, we must determine whether the trial court acted in an arbitrary
or unreasonable manner without reference to any guiding rules or
principles.  See Morrow v. H.E.B.,
Inc., 714 S.W.2d 297, 298 (Tex. 1986). 
To determine if the trial court abused its discretion in refusing to
award Elliott attorney=s fees, we must first conduct a review of the evidence to
determine whether Elliott presented legally sufficient evidence of breach of
warranty under the DTPA. 

It
is not necessary for this Court to determine whether Elliott prevailed at trial
on all of her claims for breach of warranty or on her claim for strict
liability.  The only question we must
decide is whether Elliott prevailed on any claim entitling her to attorney=s
fees.  It is undisputed that Elliott can
recover attorney=s fees only if she prevailed under the DTPA. We thus initially
decide only whether Elliott presented legally sufficient evidence of breach of
an implied warranty of merchantability, and, if we answer in the affirmative,
whether Elliott is entitled to attorney=s fees under section 17.50 of the DTPA.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 17.50(b) (Vernon 2002). 








The trial court=s failure to file findings of fact
and conclusions of law, despite this Court=s order that it do so and despite the
parties= repeated requests, makes our review
somewhat awkward.  In a case such as
this, when the parties properly requested findings but they were not filed by
the trial court, an appellate court is not required to imply all necessary
findings in support of the trial court=s judgment.  See generally Tex. R. Civ. P. 299; see also Nat=l Commerce Bank v. Stiehl, 866 S.W.2d 706, 707 (Tex.
App.CHouston [1st Dist.] 1993, no writ)
(stating that appellate court could not presume findings to support trial court=s judgment when party requested
additional, omitted and amended findings on ultimate issues raised by pleadings
and evidence and necessary to understand trial court=s judgment).  The proper remedy for a trial court=s refusal to file findings of fact
and conclusions of law is abatement of an appeal, thereby giving the trial
court an opportunity to cure its error. 
The trial court in this case, however, failed to cure despite our
abatement order.  Thus, to conduct a
review of the evidence to determine if Elliott prevailed on her claim for
breach of an implied warranty of merchantability, we must presume that the
trial court found to the contrary, as implied by its judgment, which does not
award Elliott attorney=s fees. 

In
reviewing a trial court=s findings of fact for legal and factual sufficiency, we apply
the same standards that we apply in reviewing jury findings.  Johnston v. McKinney American, Inc., 9
S.W.3d 271, 276 (Tex.
App.CHouston [1st Dist.] 1999, pet. denied). 
Elliott essentially attacks an adverse finding by the trial court on an
issue for which she had the burden of proof. 
Because of this, we first must examine the record for evidence that
supports the trial judge=s finding, while ignoring all evidence to the contrary.  Id. at 278.  A>Second,
if there is no evidence to support the fact finder=s
answer, then, the entire record must be examined to see if the contrary
proposition is established as a matter of law.=@  Id. (quoting Sterner v. Marathon
Oil Co., 767 S.W.2d 686, 690 (Tex. 1989)).








To
recover under the DTPA on a breach of warranty, a plaintiff must show
(1) consumer status, (2) existence of the warranty, (3) breach of the
warranty, and (4) the breach was a producing cause of damages.  See generally, e.g., Johnston, 9
S.W.3d at 282; see Tex. Bus.
& Com. Code Ann. ' 17.50(a) (Vernon 2002). 
The DTPA does not create warranties; rather, they must be established
independently of the act.  McDade v.
Texas Commerce Bank, Nat=l Ass=n, 822 S.W.2d
713, 718 (Tex. App.CHouston [1st Dist.] 1991, writ denied).  The
implied warranty of merchantability applies in every contract for goods, unless
specifically bargained out of the agreement. 
See Tex. Bus. & Com.
Code Ann. ' 2.314(a) (Vernon 1994). 
The serving for value of food to be consumed elsewhere is a sale of
goods.  Id.  The implied warranty of merchantability
provides that the product is fit for its ordinary purposes.  See, e.g., Church & Dwight Co., Inc.
v. Huey, 961 S.W.2d 560, 569 (Tex. App.CSan Antonio 1997, pet. denied). 
To a show a breach of the warranty, a plaintiff must demonstrate both
that the goods are not fit and that Athey suffer from a defect rendering them unfit >because
of a lack of something necessary for adequacy.=@
Id. (citing Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 442,
443B44
(Tex. 1989)); see also, e.g., Otis Spunkmeyer, Inc. v. Blakely, 30
S.W.3d 678, 688 (Tex. App.CDallas 2000, no pet.) (concluding that evidence of hard object
in cookie supported jury finding that cookie dough was unfit for its ordinary
purpose because it lacked something necessary for adequacy, Anamely,
the absence of concealed, hard objects capable of injuring a consumer@).








Strict
liability for a manufacturing defect and breach of an implied warranty of
merchantability are two separate causes of action.  See Otis Spunkmeyer, Inc., 30 S.W.3d
at 690 (citation omitted).  However, Adepending
on the facts of each case, whether a manufacturing defect exists for purposes
of products liability often resolves whether a product was defective and,
therefore, breached an implied warranty of merchantability.@  Id. (citing Hyundai Motor Co. v.
Rodriguez, 995 S.W.2d 661, 666 (Tex. 1999)).  Where the defect alleged is the same for
purposes of both a strict liability claim and a breach of an implied warranty
claim, the defect for both claims can be functionally identical.  Id. (concluding that A>defect=@
in cookie at issue in claims for strict liability and breach of an implied
warranty of merchantability were functionally identical).  Also, the proximate causation element of a
strict liability claim Asubsumes within it the concept of producing cause (>but
for=
cause).@  Id. at 691.  AAn act or defect that is not a producing cause cannot, as a
matter of law, constitute a proximate cause.@  Id.  The converse is the same; if the defect
alleged was a proximate cause of the occurrence at issue, then, as a matter of
law, it was a producing cause of the occurrence.  

Elliott
testified that she purchased Grape Nuts cereal manufactured by Kraft.  She testified that she bit into a hard,
foreign substance in the cereal and that, as a result of biting into that hard
substance, she developed problems with her tooth and had to have surgery and
other medical or dental treatment to repair the tooth.  Elliott also testified that she mailed Kraft
samples of the foreign material, rocks, in the cereal she purchased and
attempted to eat.  Kraft=s
counsel asked some questions of Elliott and Kraft=s witness that were directed to the issue of Elliott=s
credibility, whether she had pre-existing medical conditions, and whether the
rocks supplied by Elliott to Kraft were actually in the cereal she ate.  The testimony of  Kraft=s trial witness, Demika Carlswell, reveals that she doubted
Elliott=s
story.  Carlswell testified that rocks
had been found in the Grape Nuts cereal on prior occasions, but she opined that
on the particular occasion at issue, the rocks (three in the sample) sent by
Elliott did not necessarily come from the box of Kraft cereal purchased by
Elliott.  

As
we previously noted, the record does not reveal the basis for the trial court=s
judgment against Kraft.  Nonetheless, the
judgment against Kraft necessarily implies that the trial court found there was
a rock in the cereal, the rock was in the cereal due to no fault of Elliott,
and the rock caused injury to Elliott. 
Based on our review of the record for evidence that supports the trial
court=s
finding, while ignoring all evidence to the contrary, we find there is no
evidence to support the trial court=s implied finding that Kraft did not breach an implied warranty
of merchantability or that this breach was not a producing cause of Elliott=s
damages.








We
next must determine if the contrary proposition is established as a matter of
law.  Kraft sent Elliott a letter shortly
after the incident, and wrote that it had identified a rock in the samples
Elliott provided and said that the foreign material got into Kraft=s
cereal, despite extensive quality control procedures.  Elliott=s dental provider, who was qualified by the trial court as an
expert, testified that Elliott=s tooth was
injured and that he believed Elliott=s statement that she had bit into a
hard, foreign substance in the cereal at issue.  Carlswell tried to diminish the import of
Kraft=s
statements in the letter it sent to Elliott by saying that Kraft wrote that
explanation to Elliott based solely on its analysis of the sample Elliott sent
to Kraft.  Carlswell, however, testified
that if rocks were in Kraft=s cereal, the cereal would not be wholesome.

Based
on our review of the entire record, there is conclusive evidence of the
existence of an implied warranty of merchantability in the transaction at issue
and breach of that warranty.  See
generally Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 444 (Tex.
1989) (stating that plaintiff in a breach of an implied warranty of
merchantability case must prove that goods were defective when they left the
manufacturer=s or seller=s possession and Awere unfit for the ordinary purposes for which they are used
because of a lack of something necessary for adequacy, i.e., because of
a defect@).  Even assuming that the trial court found
liability only on Elliott=s strict liability claim, any finding by the trial court that
there was no breach of an implied warranty of merchantability is entirely
inconsistent with the court=s award of damages to Elliott. 
See generally Blakely, 30 S.W.3d at 690 (concluding that jury=s
inconsistent causation findingsCmanufacturing defect was not a producing cause of the
occurrence but breach of warranty was a proximate cause of the occurrenceCwere
in fatal conflict).  We have determined
that Elliott proved breach of an implied warranty of merchantability as a
matter of law.








In
light of our conclusion that Elliott proved breach of an implied warranty of
merchantability, we must determine if Elliott presented conclusive evidence of
the other elements necessary to recover under the DTPA.  As noted above, a consumer may recover under
the DTPA for breach of an implied warranty that is a producing cause of
economic damages or mental anguish.  Tex. Bus. & Com. Code Ann. '
17.50(a) (Vernon 2002).   There is no
evidence to support an implied finding in this case that Elliott was not a
consumer.  To the contrary, the entire
record supports a finding that Elliott presented conclusive evidence of her
status as a consumer under the DTPA.  See,
e.g., Melody Home Mfg. Co. v. Barnes, 741 S.W.2d 349, 351B52
(Tex. 1987) (stating requirements to establish DTPA consumer status: (1)
plaintiff sought or acquired goods or services by purchase or lease and (2)
goods or services purchased or leased form basis of the complaint).  As discussed in the foregoing paragraph,
Elliott presented conclusive evidence of the existence of and breach of an
implied warranty of merchantability. 
Furthermore, there is no evidence to support an implied finding that the
breach of the implied warranty of merchantability was not a producing cause of
Elliott=s
actual damages.  A>A producing cause is a substantial factor which brings about
the injury and without which the injury would not have occurred.=@ Johnston, 9 S.W.3d at 283 (quoting Doe v. Boys Clubs
of Greater Dallas, Inc., 907 S.W.2d 472, 481 (Tex. 1995)).  A plaintiff alleging a claim under the DTPA
is required to show only producing cause and not that the harm was
foreseeable.  Id.  In this case, the record conclusively
demonstrates that the breach of warranty was a producing cause of Elliott=s
damages, as evidenced by the trial court=s award of actual damages. 


In
summary, Elliott prevailed on one of her claims brought under the DTPA.  A consumer prevailing under section 17.50 of
the DTPA is entitled to reasonable and necessary attorney=s
fees.  Tex.
Bus. & Com. Code Ann. ' 17.50(b) (Vernon 2002). 
Thus, the trial court abused its discretion by not awarding Elliott any
attorney=s
fees.  We sustain Elliott=s
first point of error. 

A
claim for attorney=s fees is severable, and we therefore have the discretion to
reverse and remand the trial court=s judgment in part.  See,
e.g., ASAI v. Vanco Insulation Abatement, Inc., 932 S.W.2d 118, 124 (Tex.
App.CEl
Paso 1996, no writ) (stating that appellate courts may sever and reverse and
remand claims for attorney=s fees).  The
reasonableness of attorney=s fees is a fact question that must be determined by the trier
of fact.  See, e.g., Nat=l
Bugmobiles, Inc. v. Jobi Properties,
773 S.W.2d 616, 623 (Tex. App.CCorpus Christi 1989, writ denied) (reversing and remanding
cause to trial court to determine amount of reasonable and necessary attorney=s
fees to be awarded to appellee as prevailing party on DTPA claim).








Accordingly,
we reverse the trial court=s judgment in part because of our conclusion that Elliott
prevailed on a claim brought under the DTPA for breach of an implied warranty
of merchantability, and remand this matter to the trial court to determine the
amount of attorney=s fees to which appellant is entitled.  We affirm the remainder of the trial court=s
judgment.

 

 

 

 

/s/        Leslie
Brock Yates

Justice

 

 

 

 

Judgment rendered and Majority and
Concurring Opinions filed July 24, 2003.

Panel consists of Justices Yates, Hudson,
and Frost. (Hudson, J.
concurring).

 

 











[1]  Although
Elliott apparently requested that her motion for entry of judgment be included
as part of a supplemental clerk=s record in this case, the motion is not part of the
record.  Elliott=s proposed final judgment is in the supplemental clerk=s record.





[2]  Only Elliott=s AFirst Amended Proposed Findings of Facts and
Conclusions of Law,@ filed on February 27, 2002, is in the clerk=s record. 
Presumably, an earlier set of proposed findings of fact and conclusions
of law were filed, but they are not in the clerk=s record
or supplemental clerk=s record.